BLANCHE, Judge.
In this and in a companion suit entitled “Greater Baton Rouge Airport District, et al. v. Holden, et ux.,” 258 So.2d 645, Appeal No. 8708, both of which suits were consolidated for trial, the respective landowners have appealed a judgment by the trial court, seeking an increase in the award of just compensation for the total expropriation by plaintiff of the respective properties of the landowners. The only issue presented in each appeal is the amount of money which the landowners are entitled to recover from plaintiff for the total taking of their respective properties. Plaintiff filed an answer to each appeal, asking that the award of just compensation by the trial court be reduced. This opinion will cover all issues presented by both appeals, although a separate decree will be entered in Appeal No. 8708.
Finding no manifest error committed by the trial judge, we affirm.
The trial judge rendered Written Reasons for Judgment summarizing his findings of fact and conclusions therefrom, from which we quote approvingly the following excerpt:
“This is an expropriation proceeding wherein the Greater Baton Rouge Airport District, et al seeks to acquire certain properties owned by Arthur L. Carrick, et ux, hereafter referred to as Carrick, and Fred Lee Holden, et ux, hereafter referred to as Holden. Separate suits were filed against Carrick and Holden but were consolidated for purposes of trial because the properties adjoin one another.
“These properties are needed by plaintiff because they are situated at the end of the northeast runway of Ryan Airport. Plaintiff intends to extend said runway and needs the properties in question in order to keep man-made or natural obstructions that could interfere with the flight of aircraft off the property.
“The properties front on the west side of the Plank Road. The Carrick property is a 3.11[1] acre tract with a two-bedroom frame residence thereon which presently is being used partially as a commercial dress shop. The Holden property consists of 3.-9[2] acres and is adjacent and north of the Carrick tract and has a two-bedroom frame residence thereon. Both properties are inside lots with the Carrick property situated approximately 393 feet from the corner of Plank Road and Blount Road. The Carrick tract has a front of 200.8 [200.08] feet on the Plank Road and irregular depths along its sides and a width of 194 feet on the rear. The Holden tract has a front of 200.07 feet on the Plank Road, with irregular depths along its sides and a rear width of 193.99 feet.
“Oren Russell and Dan Carlock were called as appraisers for the plaintiff. John Lejeune was called as an appraiser for Carrick and Holden. All the appraisers used the market-data approach to arrive at the value of subject property. All the appraisers were in agreement that the highest a.nd best use for subject property was commercial. Both of said tracts are zoned C-2 which is designated by the zoning ordinance as Highway Commercial.
*642 “Plaintiffs’ estimate of just compensation for the Holden tract was $27,700.00. Its estimate of just compensation for the Carrick tract was $26,100.00. Tender of this amount was made to the property owners reserving to them the right to a judicial determination of just compensation. Accordingly, the only issue before the Court is the determination of just compensation.
“The case is somewhat complicated because the plaintiffs’ appraisers while employing the market data approach evaluated on the square foot basis while defendants’ appraiser evaluated on the front foot basis. Both of plaintiffs’ appraisers used the same comparables. Mr. Russell came up with a figure of $7,800 per acre for the land value while Mr. Carlock arrived at a value of $8,000 per acre for the land. Mr. Lejeune used two of the same compara-bles, but used the foot front [sic] basis and made allowances for the depth in question. The Court will discuss in detail the compa-rables labeled 161 and 188 in the testimony. Said sales were introduced as P-1 and P-3. All of the appraisers used these two com-parables and the Court felt that they came closest to subject properties. Comparable 188, hereafter referred to as the Bahlinger sale, was situated just north of subject property on the same side of the Plank Road. Comparable 161, hereafter referred to as the First Church property, was situated south of subject property but on the east side of the road. Both the Bahlinger and the First Church properties were size-able tracts which had a great depth. First Church contained a total of 10 acres but had a frontage of only 180 feet on the Plank Road. The Bahlinger sale had a total of 16.35 acres and had frontage of 309.-2 feet on the Plank Road. While these two tracts were not comparable because of size, the Court felt that they were comparable in most every other respect.
“The Court placed no weight on any of the comparables situated near the intersection of Plank Road and Harding because it felt that the location was so vastly superior to the subjects. At that particular intersection Plank Road is still a four lane highway. Commercial development is quite intense in this area and the traffic patterns are much heavier therein. The Court feels that any comparable used in this area would have to be adjusted drastically downwardly. These factors eliminate several comparables used by the various appraisers.
“The Court also placed little weight on those comparables located between Guice Drive and the Thomas Road to the north because the Court felt that these particular properties were superior also because of location. The Bahlinger tract and the First Church tract are the most comparable.
“The influence of the Ryan Airport is evident on both tracts as well as on subject properties and this is a factor to be taken into consideration by the Court, along with the factors to be described hereafter.
“Mr. Russell using the First Church comparable found that the sale was passed on June 20, 1969. It was zoned as C-l. The total purchase price was $45,000.00. This projected a per acre price of $4,500 or a square foot value of $103. He thought it was inferior to subject property because of its depth which extended approximately 39 chains back off the Plank Road. He felt that this depth made the comparable inferior and he adjusted the comparable upward to 50% to equalize the properties.
“Dan Carlock also adjusted subject property upward because of the size of the First Church tract. As mentioned earlier both of these appraisers used the square footage or acreage evaluation.
“Mr. Lejeune used the same comparable but found that by using the front foot evaluation an indicated price per front foot of $250.00 was generated. He found that only the front 500 to 600 feet of the comparable was being used and that the remaining land was vacant and unimproved.
*643 “The Bahlinger sale was dated August 13, 1970; the consideration for 16.305 acres was $58,600.00 which projected a per acre price of $3,584 and a square foot price of $.082. This property was zoned A-l. Both Mr. Russell and Mr. Carlock used this comparable and both adjusted it accordingly because of the size of the tract afid its A-J zoning. These appraisers were in agreement that adjustments must be made when acreage is involved with great depth.
“Mr. Lejeune using the same comparable felt that the sale price generated a front foot valuation of $190.00. He was quite familiar with the property because he had been retained by the true purchaser, Gulf States Utilities, to make an appraisal prior to their purchase. The rear 40% of the property is subj ect to . periodic inundation. He felt that after deducting the rear or lower portion of the tract that it was very comparable to subject. He considered subject to be 25% superior due to zoning and elevation.
“The Court must determine whether an evaluation in this case should be made on a square foot or front foot basis. The properties in question do not have the depth that the First Church or Bahlinger compa-rables had. Property owners cite the case, Parish of Iverville [Iberia] v. Cook, 116 So.2d 491, 238 La. 697, as authority for use of the front foot basis in this case. The facts of that case indicated that the property had a front of 100 feet on Highway 90 by a depth between parallel lines of approximately 500 feet. The Holden tract had a depth along one side of 775 feet and on the other side of 715 feet while the Carrick tract had a depth on one side of 715 feet and a depth on its other side of 658 feet. The Court feels that the said case is ample authority for use of the front foot basis in this case.
“Mr. Lejeune using the front foot basis arrived at a value of $245 per front foot which projected to a total of $49,000.00 for the tracts. The Court does not feel that it can accept this figure. To do so would place an equal or greater value on subject properties than properties located around the intersection of Plank Road and Harding which are clearly superior.
“The Court feels that an adjustment downwards to $150.00 a front foot would indeed reflect the fair market value of the land in question when considered with all of the other properties in the adjoining area, especially those north and south which set the upper limits for evaluation of any property in the area. A front foot evaluation of $150.00 indicates a value per acre of approximately $10,000.00. This would compare quite favorably with other properties in the area and would be lower than the property around Plank and Harding.
“The highest and best use for the property was commercial, so the buildings situated thereon would only have salvage value to a prospective buyer. The Court agrees with the appraisers for plaintiff on the salvage value of the improvements and fixes same on the Carrick improvements at $1,700.00 and on the Holden property at $1,200.00.” (Written Reasons for Judgment, Record, pp. 30-34, Appeal No. 8707)
The first specification of error is the alleged error by the trial court in refusing without reason to accept expert testimony offered by the landowners and substituting its own opinion, where the expert testimony of plaintiff had been rejected as not based on sound reasoning. The crux of this argument is that inasmuch as the trial judge concluded that plaintiff’s two expert real estate appraisers had improperly valued the property on a square foot basis rather than on a front foot basis, their testimony should have been rejected in toto, leaving only the expert testimony of the landowners’ real estate appraiser. It is further contended that inasmuch as the award does not follow the opinion of the landowners’ real estate appraiser, the trial judge substituted his own opinion in *644 making the respective awards. This specification of error is without merit.
Our review of the record fails to demonstrate where the trial judge committed manifest error in resolving the conflicting expert opinion and in weighing and evaluating all of the testimony contained in the record relative to the determination of just compensation owed the landowners in these expropriation proceedings. The mere fact that the trial judge concluded that plaintiff’s two real estate appraisers erroneously utilized the square foot rather than the front foot method of appraising the property does not per se require the trial judge to disregard entirely their testimony concerning land value. The Louisiana Supreme Court case relied on so heavily by counsel for defendants, Parish of Iberia v. Cook, 238 La. 697, 116 So.2d 491 (1959), indicates that although the Louisiana Supreme Court disapproved of the reliance by the landowner’s appraisers on the square foot rather than front foot basis for appraising the land, nevertheless, the Supreme Court did not disregard entirely their testimony concerning land value. Instead, the Supreme Court merely converted their testimony pertaining to land value from a square foot basis to a front foot basis, and by utilizing such testimony, as well as the testimony of plaintiff’s expert witnesses, arrived at an amount of just compensation less than the recomputed or converted front foot land value of the landowner’s appraisers but greater than the front foot land value of plaintiff’s appraisers. (See Parish of Iberia v. Cook, 116 So.2d at 496-498.)
As held in State, Through Department of Highways v. William T. Burton Industries, Inc., 219 So.2d 837 (La.App. 3rd Cir.1969), writ refused, 254 La. 14, 222 So.2d 67 (1969), the trier of fact is not required to accept or to reject testimony of each expert witness in toto, but instead has the right to evaluate the weight to be given to the testimony of each witness in an expropriation case, and also has the right to make factual determinations as to which of the factors relied upon by the witnesses relevantly influence market value. The mere fact that the trial court in the instant cases arrived at a valuation which did not coincide with the testimony of either the plaintiff’s experts, on the one hand, or the landowners’ expert, on the other, does not make the valuation determination manifestly erroneous, as evidenced by the Supreme Court’s utilization of a front foot valuation of $250 in Parish of Iberia v. Cook, cited supra, even though plaintiff’s witnesses placed a value of $175 per front foot on the land while defendant’s witness’ estimate when converted to a front foot basis, amounted to $651 per front foot.
In a trial of an expropriation suit in which the experts disagree as to the value of the land taken, much discretion is granted to the trial court in the evaluation of and the weight to be given to the testimony of each expert witness, and the findings of fact by the trial court are not to be disturbed on appeal unless such findings are clearly in error, Parish of East Baton Rouge v. S & H Heating Company, 216 So.2d 360 (La.App. 1st Cir.1968); State, Through Department of Highways v. Potter, 204 So.2d 308 (La.App. 1st Cir.1967).
Considering all relevant factors, we cannot say that the trial judge clearly abused his discretion in making the respective awards of just compensation, especially when comparing the size and location of the expropriated property with the various comparables.
The second specification of error concerns the alleged erroneous acceptance by the trial judge of hearsay testimony over defendant’s objection, which testimony defendants urge was utilized in fixing salvage value on the buildings. This specification of error is likewise without merit. The record reflects that the expert testimony offered by plaintiff concerning salvage value of the improvements situated on the property sought to be expropriated was not based entirely on al *645 leged hearsay evidence, but was also based on personal knowledge and experience of the expert appraiser. (See transcript, p. 23.) The record fails to demonstrate where the trial court committed manifest error with regard to the determinations of salvage value.
Although plaintiff filed an answer to the appeal seeking a reduction of the awards made by the trial court, counsel for plaintiff has not filed a brief or presented argument in support of the contentions raised in the answer to the appeal. The request for a reduction of the trial court’s respective awards is, accordingly, considered abandoned, there being nothing patent on the face of the record warranting such a reduction.
For the foregoing reasons, the judgment appealed from is affirmed, with all costs of this appeal assessed to defendants.
Affirmed.

. Shown to be 3.40 acres in the judgment dated June IS, 1971, Record No. S707, p. 38. (Footnote by this Court)

. Shown to be 3.39 acres in the judgment dated June 18, 1971, Record No- S70S, p. 31. (Footnote by this Court)