HOOD, Judge.
This is an expropriation suit instituted under LSA-R.S. 48:441 et seq., by the State of Louisiana, through the Department of Highways, against Wilfred So-ileau'. Plaintiff deposited $175.00 as the estimated value of the land expropriated. Defendant answered demanding increased compensation for the property taken and severance damages. Judgment was rendered by the trial court awarding defendant $28,075.00 in addition to the amount deposited, which included $650.00 for the property taken and $27,600.00 as severance and other damages. Plaintiff appealed.
The issues are whether the highest and best use of the subject property was for “commercial” purposes, and whether defendant’s remaining property sustained severance damages.
The order of expropriation was signed on October 3, 1969. Defendant at that time owned a 40 acre tract of land located about 1.2 miles southwest of Mamou, in Evangeline Parish. His property was bounded on the east by Louisiana Highway 13 and on the south by a narrow graveled road or lane. Highway 13 is a two lane blacktopped thoroughfare. It runs north and south where it borders on defendant’s property, and at the time of the taking it was the principal road between Mamou and *386 Eunice. Defendant’s property had a frontage of 1325 feet on Highway 13. His home was located on that property near the southeast corner of the parent tract. Except for the homeplace, all of defendant’s property was used solely for agricultural or farming purposes at the time of the taking.
By this proceeding plaintiff expropriated a narrow, irregular triangularly shaped strip of land, comprising 0.13 of an acre, in the southeast corner of the parent tract. The property taken measured 239.66 feet along the east line of defendant’s tract of land, fronting on Louisiana Highway 13, and it extended a maximum depth of 82.58 feet along the narrow graveled lane which is the south boundary of that tract. There were no improvements on the property, except for a fence which had to be removed. No part of defendant’s homeplace was taken. The property was used by the Highway Department for the purpose of relocating and improving Highway 13.
Three appraisers testified for defendant and two testified for plaintiff. One of defendant’s experts valued the parent tract as subdivision property, and the trial judge correctly refused to accept his appraisal. The other two appraisers engaged by defendant, Haskar V. Garland and Richard K. Reed, felt that the highest and best use of the front land, that is, the part of the parent tract which fronts on the highway and extends to a depth of 250 feet, was best suited for commercial use at the time of the taking. Both of them agreed that that part of the property had a value of $5,000.00 per acre, and they appraised the part taken, consisting of 0.13 of an acre, at $650.00.
The appraisers called by plaintiff, A. Byron Core and Stanley A. Tiger, felt that the highest and best use of the entire parent tract was for agricultural purposes. One of them valued the land at $1,000.00 per acre, and the other valued it at $875.00 per acre. They appraised the part taken at $130.00 and $114.00, respectively. Both of these appraisers acknowledged that some fencing on the property taken had been destroyed, and each concluded that defendant was entitled to the additional sum of $97.00 for that fencing.
The trial judge accepted the appraisals of Garland and Reed, who testified for defendant, and he awarded defendant $650.00 as the value of the property taken. We cannot say that the trial judge erred in finding the expropriated property to be commercial property and accepting the appraisals of these two experts. We thus have concluded that that part of the judgment appealed from should be affirmed.
We are not able to agree with the conclusions reached by the trial court, however, as to severance damages.
Defendant’s appraisers, Garland and Reed, concluded that all of defendant’s front land, to a depth of 250 feet, sustained severance damages. They agreed, however, that defendant’s homeplace, which they determined had a frontage of 100 feet on the highway by a depth of 250 feet, was not damaged by the taking, and that no severance damages were sustained by the rear lands or any other part of defendant’s parent tract. Both of those experts felt that as a result of the taking the highest and best use of the front land (except the homeplace) changed from commercial to agricultural purposes, and that the value of that frontage property decreased from $5,000.00 to $1,000.00 per acre.
The appraisers for defendant determined that the front land, with a frontage of 1325 feet and a depth of 250 feet, comprised a total of 7.60 acres. After eliminating the area covered by the admittedly undamaged homesite, comprising 0.57 of an acre, and the part taken by plaintiff, 0.13 of an acre, there remained a total of 6.90 acres which these appraisers felt had been damaged to the extent of $4,000.00 per *387 acre as a result of the taking. Both of them concluded that defendant sustained severance damages of $27,600.00.
The trial judge, accepting the views expressed by defendant’s appraisers, awarded defendant $27,600.00 severance damages.
As already noted, Highway 13 was hard surfaced and it constituted the main thoroughfare for motor traffic between Ma-mou and Eunice. Although we are not disturbing the trial judge’s holding that defendant’s front land was best suited for commercial purposes, it is appropriate to note that very little property in that area was being used for commercial purposes. No part of defendant’s 40 acre tract was being used for such a purpose, and the evidence shows that there were only two business establishments in that area. They consisted of two lounges or night clubs located on Highway 13, about one-fourth of a mile north of the north line of defendant’s land. Both of these businesses thus were nearer the Town of Mamou than was defendant’s property. One appraiser thought that a trailer sales lot was located at an unspecified distance south of defendant’s property, but the evidence indicates that that establishment did not exist at the time of the taking. It began doing business sometime after the new highway had been constructed.
The highway project for which a small part of defendant’s property was taken involved the re-routing of Highway 13. That part of the old Highway 13 which borders on defendant’s property, and which runs in front of the two lounges or night clubs just mentioned, remains just as it was at the time of the taking, except for a slight modification at the northeast corner of defendant’s parent tract. Defendant still has access to and from that highway exactly as he had before this suit was filed, and he can still travel from his property to Mamou or Eunice by means of the old highway and by substantially the same routes as he did before.
The new re-located highway curves in a northeast-southwest direction, and it intersects or joins old Highway 13 at about the southeast corner of defendant’s parent tract. The new highway does not border on or touch defendant’s property anywhere except at the southeast corner of it. There is a curve in the new highway at that point which makes it necessary for a southbound motorist on the new highway to turn slightly to his left as he traverses the very small part of the highway which borders on the corner of defendant’s land. The highway is banked at that curve so that the west edge of the new highway, being the outside edge of the curve, is higher than the east edge of it at that point. One of defendant’s appraisers estimated that the west edge of the new highway at that curve was seven or eight feet higher than the level of the surrounding land.
Immediately after the construction of the new highway was' completed, old Highway 13 was “dead-ended” at a point near the southeast corner of defendant’s parent tract. The Highway Department, however, constructed a hard surfaced crossover from old Highway 13 to the new highway. The crossover is only a few feet long, and it is hardsurfaced like old Highway 13 and the new highway. Also, the evidence shows that the “dead-end” sign on the old highway at the southeast corner of defendant’s land was removed soon after the new road was completed, and motorists now can get from the old highway to the new one either by means of the crossover or by continuing, to travel south on old Highway 13 until it intersects the new roadway. Defendant thus has been provided with easy, convenient access to the new highway. He has not been deprived of any of the highway frontage he had originally, or of any access which he had previously to the old highway or to the lane running along the south side of his remaining property.
The appraisers for defendant felt that the defendant suffered severance damages *388 as the result of the relocation or re-routing of the highway, and as a result of the design of the new roadway. In that connection, appraiser Garland testified:
“Q: And what aspects of that changed it, is it simply the relocation of the highway, the design or what ?
“A: The relocation of the highway.
“Q: Did its design have anything to do with it ?
“A: It definitely did, in the curve there is about seven to eight feet — blocks the view of his home, actually in all fairness to Mr. Soileau, I think they have an actual damage to the house. It is — ordinarily you wouldn’t build a house that would be blocked away from a main highway like that. Of course, I didn’t figure any damages as far as the house was concerned but in all fairness I think there is a damage.”
j}í ;fc ‡
“Q: Suppose the Highway Department only took 1.3 acres and the old Louisiana Highway 13 still was running right in front of Mr. Soileau’s property, would you have found any damages ?
“A: If they wouldn’t have changed their route of the highway is that correct ? There wouldn’t have been any damages, no damages. Of course, they would have had to be compensated for the property taken, other than that, that is right, just for the land.”
Mr. Reed, another of defendant’s appraisers, testified in part as follows:
“Q: What brought about this change from commercial to farm land ?
“A: Well, naturally they moved the highway which is a highly traveled road and there is no more traffic on it and it seems to be abandoned. I won’t say it is but it is — there is never anything done, it doesn’t seem to be kept up well and it makes the home site of Mr. Soileau look bad. Actually it w.as a high spot and now it looks like — that high dump they threw right in front of his home, it really makes it look bad.
“Q: Is it merely the relocation of the highway, that is, having changed route or is it the way they built the highway?
“A: It is the way the highway is built that makes it look bad but then at the same time they took the traffic off it.
“Q: Does the fact that they came to a dead-end at the Southeast corner of Mr. Soileau’s property, does that contribute to the damage ?
“A: It does, yes, to his home site.”
We interpret the testimony of these experts to be that the highest and best use of the defendant’s frontage property was changed from commercial to agricultural purposes primarily because the highway was re-routed, causing traffic to be diverted from the old highway which abuts his land. They attribute some of the severance damage to the fact that the Highway Department does not maintain old Highway 13 as well now as it did before the new roadway was constructed. And, finally, they feel that the design of the new highway, with a part of the roadbed being elevated several feet above the level of the surrounding land, causes severance damages to defendant’s homeplace.
The evidence shows that the two lounges or night clubs which are located on old Highway 13 north of defendant’s property are still engaged in business, although the new highway by-passes those establishments and that part of the old highway, just as it does defendant’s property.. Defendant’s appraisers pointed to the fact that those two businesses were located in the area of defendant’s land at the time of the taking, and they relied on that fact as the principal basis for their finding that defendant’s property was best suited for commercial purposes at that time. There, in fact, were no other commercial enterprises in that area on which they could rely. This case was tried more than four years after the subject property was taken, *389 and long after the construction of the new highway had been completed. Yet, the evidence shows that at the time of the trial the same two establishments were still engaged in the same types of business at the same places. The fact that those businesses are still operating, despite the relocation of the highway, indicates that defendant’s frontage property also is suited as well for commercial purposes today as it was before the taking, and that it has not sustained severance damages as a result of the rerouting of the highway or the diversion of traffic. Actually, defendant’s remaining frontage property has closer access to the new highway than does either of the above lounges.
Both of plaintiff’s appraisers testified that in their opinions defendant’s remaining property was not damaged as a result of the taking.
The law is settled that inconvenience to the landowner, diversion of traffic or change in attending conditions are not proper elements of severance damages in an expropriation suit, unless they diminish the value of the owner’s remaining property. State, Department of Highways v. Daigle, 278 So.2d 525 (La.App. 3 Cir. 1973); State, Department of Highways v. Beatty, 288 So.2d 900 (La.App. 1 Cir. 1974); State, Department of Highways v. Wellan, 279 So.2d 782 (La.App. 3 Cir. 1973).
The burden of proof rests on the landowner to establish the amount of severance damages he has sustained as a result of the expropriation. Severance damages are never presumed, and they will not be allowed if based on speculation or conjecture. They must be established by competent evidence showing that the land remaining has been diminished in value as a result of the taking. State, Department of Highways v. Miller, Smith & Champagne, Inc., 285 So.2d 855 (La.App. 1 Cir. 1973); Dixie Electric Membership Corp. v. Sibley, 280 So.2d 346 (La.App. 1 Cir. 1973); Dixie Electric Membership Corp. v. Whitehead, 280 So.2d 315 (La.App. 1 Cir. 1973).
Where the evidence shows that an appraiser assumed incorrect facts in determining that severance damages were sustained as a result of the taking, the opinion of that expert as to severance damages is not entitled to credit or weight, since it is not well grounded on facts or logic. Louisiana Power and Light Company v. Pipes, 188 So.2d 639 (La.App. 2 Cir. 1966); State, Department of Highways v. Miller, Smith & Champagne, Inc., supra.
In the instant suit the frontage of defendant’s property on Highway 13 has remained unchanged. He continues to have the same highway frontage and the same access as he had before the taking. The conclusion reached by his appraisers, Garland and Reed, that the diversion of traffic from old Highway 13 has caused defendant’s remaining land to change from commercial to agricultural property is not supported by the evidence. The same commercial enterprises which were located on old Highway 13 at the time of the taking have continued to exist and they are still doing business there, although traffic was supposedly diverted from their properties just as it was from defendant’s remaining land. The two appraisers called by plaintiff disagree with Garland and Reed. They feel that defendant’s remaining property has not sustained severance damages as a result of the taking.
There is a conflict, therefore, in the testimony of the appraisers as to whether defendant suffered severance damages, and the evidence does not support the conclusions reached by the experts who testified for defendant. We have already noted that the burden of proof rests on defendant to establish by competent evidence that he has sustained severance damages. After considering these circumstances, we conclude that defendant has failed to show that he has sustained severance damage as a result of the taking and the diversion of traffic from old Highway 13.
*390 Severance damages cannot be allowed for the alleged failure of the Highway Department to continue to maintain old Highway 13, where it borders on defendant’s property, as well as it did before the taking.
There is no merit to Soileau’s claim that the design of the new highway where it borders on his property has caused him to suffer severance damages. Defendant’s appraisers made it clear that the elevation of the highway at that point has affected only defendant’s homeplace. They testified specifically, however, that the homeplace sustained no severance damages. No appraiser suggested that the highest and best use of the homeplace was changed as a result of the taking, and no evidence was presented tending to show the before and after value of that part of defendant’s remaining property.
Our conclusion is that the trial judge erred in awarding severance damages to defendant, and that the judgment appealed from must be amended to delete the award of those damages.
For the reasons assigned, the judgment appealed from is amended by reducing the amount of the award from $28,075.00 to the sum of $475.00. In all other respects the judgment of the trial court is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
Amended and affirmed.
WATSON, J., concurs in part and dissents in part, assigning reasons.