386 So.2d 1023 (1980)
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION & DEVELOPMENT, Plaintiff-Appellee,
v.
Darrell VAN WILLETT, Sr., et ux., Defendants-Appellants.
No. 7689.
Court of Appeal of Louisiana, Third Circuit.
June 25, 1980.
Rehearings Denied August 22, 1980.
*1026 Gold, Little, Simon, Weems & Bruser, Charles S. Weems, III, Alexandria, for defendants-appellants.
Bryan Miller, Baton Rouge, for plaintiff-appellee.
Before DOMENGEAUX, FORET and CUTRER, JJ.
CUTRER, Judge.
This is an expropriation suit instituted by the State of Louisiana through the Department of Transportation & Development (Department) against Darrell Van Willett, Sr., and Betty Jo Cobb Willett under the *1027 provisions of LSA-R.S. 48:441, et seq. The Department deposited the sum of $156,328.00 for the takings and damages. The trial judge awarded $303,331.83 for the land taken, with damages; $500.00 for preparation of exhibits; $2,250.00 in fees for one of the Willetts' experts and $10,000.00 as attorney's fees. The Willetts appeal seeking an increase in the award.
The trial judge provided in his written reasons the following general description of the area of the takings:
"... The portions of defendant's property involved in this suit are located in the extreme Northern part of Rapides Parish, near the Dresser Valve Plant, an area that is experiencing rapid development as a location for residential subdivisions. The area also has limited commercial potential, associated mainly with the more fully developed subdivisions. The topography is rolling hills with pine and oak trees. Most of the fully developed subdivisions lie to the South and East of defendant's property, nearer to Alexandria & Pineville, with the land to the North and East of defendant still undeveloped. Thus defendant's properties lie on the dividing line between the developed and undeveloped lands, and it will be seen that defendant's properties are in a transitional stage, some partially developed, some undeveloped with a potential for development...."
Defendants' properties have been expropriated by the Department pursuant to a court order of June 26, 1978 in connection with State Project # 23-01-17, the Tioga-Bently Highway. This project involves the extension of the existing U. S. Highway 71 and U. S. Highway 167 in northern Rapides Parish. From this intersection, a new leg of Highway 71 is being constructed across Willett's properties to connect the old Highway 71 and the expressway. The Department has designated the tracts of land taken by the numbers 8-1-1; 8-1-2; 8-2; 8-3; 8-3-C-1; 8-4; 8-5; 8-6 and 8-11-6-1.
Parcels 8-1-1, 8-1-2, 8-2 and 8-4 are takings from a tract of land which is being developed by the Willetts as a subdivision known as Timber Trails Unit 7 on the southeast side of U. S. Highway 71. In connection with this subdivision development, the trial judge stated the following facts:
"... Plats and Restrictive Covenants were filed in the Public Records of Rapides Parish several years prior to the expropriation. At the time of the expropriation, the subdivision was partially developed. Roads had been constructed, some but not all sewers had been laid, and the land was cleared with only selected trees remaining. The restrictive covenants provided that certain lots on Titleist Drive were to be used only for commercial and/or multi-family residential, while the lots further back in the subdivision were restricted to use as single family residential lots...."
"Some of the commercial lots had been sold prior to the expropriation, but no construction had taken place thereon. The subdivision was laid out in such a manner that all traffic going or coming from the residential areas of the subdivision had to pass through the commercial area. The only access to Highway 71 was by Titleist Drive, which passes through the commercial area. Defendant testified that the plan of development specified that the residential lots be sold first to create a captive residential backup. Once enough people lived in the subdivision, then the commercial lots would be developed to serve the residential population. At the time of the expropriation most residential lots in the subdivision remained unsold."
All the lots in the 8-1-1 and 8-1-2 taking were classified as commercial and/or multi-family residential.
The lots in parcel 8-2 were classified by restrictive covenants as interior commercial lots with the exception of one lot (lot 23) which was classified as a residential lot. Parcel 8-4 was also restricted to use for commercial purposes.
Two of the parcels at issue were located outside the subdivision and these were 8-3 *1028 and 8-6. Parcel 8-3 is a partial taking of an undeveloped tract of land to the northwest side of Highway 71 across from the subdivision property.
Parcel 8-6 is a partial taking of a small tract of land a short distance north of the subdivision. It is on the same side of the road as the subdivision and fronts on Highway 71.
Parcel 8-5 is the taking of a part of a narrow utility corridor for which an award of $1,358.00 was made and is not at issue on appeal.
It was stipulated at trial that the compensation due for temporary construction servitudes 8-3-C-1 and 8-11-C-1 was $8,329.00. This amount is not at issue on appeal.
The Willetts have made numerous assignments of error which we will address in the following order:
(1) The adequacy of the award for the complete taking of:
(a) Lots 1-5 (comprising part of parcel 8-1-1);
(b) Lot 6 (in parcel 8-1-1) and lot 9 (comprising parcel 8-4);
(c) Lots 79-83 (comprising part of 8-1-1) and lot 7 (comprised of 8-1-2 and part of 8-1-1);
(2) The adequacy of severance or consequential damages to the following:
(a) Lots 10-14 (not taken);
(b) Lot 9 (partial taking in 8-4);
(c) Lot 15 (partial taking in parcel 8-2);
(d) Lot 19 (partial taking in parcel 8-2);
(e) Lots 20-22 (partial taking in parcel 8-2);
(f) Lot 23 (partial taking in parcel 8-2);
(g) Lots 24-46 (not taken).
(3) The adequacy of award for the taking of parcel 8-3 and the severance damages to the remainder;
(4) The adequacy of the award for the taking of parcel 8-6 and severance damages to the remainder;
(5) The failure to award compensation for properties allegedly removed from commerce at the Department's request from October 3, 1978 through the date of the taking;
(6) The failure to award compensation for properties allegedly owned by the Willetts within 40 feet of the centerline of the present Highway 71 and taken by the Department for the current project but not within the area of use over which the Department enjoys a St. Julien servitude;
(7) The failure to award expert witness fees to Darrell Van Willett, Sr.;
(8) The adequacy of the award for preparation of exhibits;
(9) The adequacy of the award of expert witness fees to Perry E. Futrell;
(10) The adequacy of the award of attorney's fees to the Willetts.
The errors assigned by defendants with regard to the adequacy of awards for the taking of the various parcels and the severance damages involve many of the same legal principles, particularly those dealing with the credibility and weight of expert testimony and the discretion of the trial court in its fact finding. We will therefore set forth the general principles regarding the weight and credibility to be given to the experts' testimony and reports and the trial court's discretion in making its determination of facts.
Opinions as to the value expressed by experts are not binding on the trier of fact since they are not ordinarily conclusive and are generally regarded as advisory in character. The purpose of such opinions is to assist the court in its effort to determine the ultimate facts. State, Department of Highways v. McPherson, 259 So.2d 33 (La. 1972).
The trier of fact is not required to accept or reject the testimony of each witness in toto. The trial judge is not required to accept the precise amount of any expert. He may instead make an award in an amount to which no expert testifies since the trial court is empowered to evaluate the *1029 weight to be given to each witness' testimony, as well as to make factual determinations as to which of the facts relied upon by the witnesses relevantly influences market value and severance damages. Greater Baton Rouge Airport District v. Carrick, 258 So.2d 640 (La.App. 1st Cir. 1972); State, Dept. of Hys. v. William T. Burton Indus., Inc., 219 So.2d 837 (La.App. 3rd Cir. 1969), writs den., 222 So.2d 67 (La.1969).
The trial court may not, however, substitute its own opinion for that of the experts who testified at trial (i. e., completely disregard such testimony) when such testimony is well grounded from the standpoint of good reasoning. State, Dept. of Highways v. Eubanks, 345 So.2d 533 (La.App. 3rd Cir. 1977); State, Department of Highways v. Thurman, 231 So.2d 692 (La.App. 1st Cir. 1970).
The effect given to expert opinion testimony is governed by the weight such testimony is accorded by the trier of fact. This weight is determined by the professional qualifications and experience of the expert, the facts and studies upon which the opinion is based and, when land appraisals are involved, the familiarity with the locality. State, Department of Highways v. McPherson, supra.
Also to be considered in evaluating weight to be given is the possible bias of the witness in favor of the side for whom he testified. (In the present case, one of the defendants, Darrell Van Willett, Sr., and a close associate and relative of Willett, Perry E. Futrell, testified as defendants' expert.) Though an owner's testimony in the capacity of an expert may be considered, it should be cautiously viewed since the owner is interested in the outcome of the lawsuit. Neither should such testimony be rejected merely because the witness is a party. State, Department of Highways v. McPherson, supra; State, Department of Highways v. Willett, 322 So.2d 383 (La.App. 3rd Cir. 1975).
Finally, it is well settled in expropriation suits that much discretion is granted to the trial court in the evaluation of and weight to be given to the testimony of each expert witness. The findings of fact by the trial court will not be disturbed on appeal unless such findings are clearly erroneous. Greater Baton Rouge Airport District v. Carrick, supra.

VALUE OF THE TAKING OF LOTS 1-5 (In 8-1-1)
Lots 1-5 of the Timber Trails Unit 7 subdivision comprise part of parcel 8-1-1. These lots front on Highway 71 and have their highest and best use as commercial property. All of these lots are interior lots. These lots have no direct access to the residential subdivision lots and would be dependent for business on traffic using Highway 71. There were no existing structures on these lots when taken.
The trial judge, after analyzing the appraisal reports in evidence, including comparable sales used by the experts who testified, found the market value of lots 1-5 to be $1.50 per square foot. Since the total area taken was 45,872.2 square feet, the total award for lots 1-5 was $68,808.30.
The defendants claim this award is inadequate. Defendant Willett and Percy Futrell who testified for defendants placed a value on the lots of $1.85 per square foot. They reached this value using three previous sales in the subdivision and a final district court judgment valuing a lot in the same subdivision previously expropriated from another owner.
Gene Cope who testified as an expert for the Department considered the three previous sales, plus a number of other sales in Rapides Parish. Cope reached a value of $1.56 per square foot for these lots.
M. C. Gehr, also a Department expert, reached a value of $1.15 per square foot based upon a number of comparable sales and discounting for a one-day sale. This discounted value of $1.15 is questionable because it does not allow a reasonable time for sale. State, Department of Highways v. Mouledous, 200 So.2d 384 (La.App. 3rd Cir. 1967). Gehr stated, however, that before discounting he assigned a value of $1.25 per square foot.
*1030 Our review of the record does not reveal that the trial judge was clearly wrong in his valuation. The trial judge, in considering the evidence before him, did not accept or reject in toto the testimony of any one witness, but instead evaluated the weight of the testimony and reached a conclusion which is not clearly in error. Greater Baton Rouge Airport District v. Carrick, supra; State, Dept. of Hys. v. William T. Burton Indus., Inc., supra. The trial judge is within the range of the expert testimony offered.
VALUE OF THE TAKING OF ALL OF LOT 6 AND THE VALUE OF THE PARTIAL TAKING OF LOT 9 (8-1-1 AND 8-4)
Lot 6 is located in parcel 8-1-1 and is on the corner of Highway 71 and Titleist Drive. The trial court determined that the value of lot 6 was $1.68 per square foot. The highest and best use was commercial.
Lot 9 was the subject of partial taking designated as parcel 8-4. This lot is also on the corner of Highway 71 and Titleist Drive opposite from lot 6. The trial judge also placed a value of $1.68 per square foot on lot 9. The highest and best use was also commercial.
Defendants seek an increase in the awards. Defendants' experts (Willett and Futrell) determined that lots 6 and 9 as corner lots had a value of $2.22. This was based on a 20% upward adjustment from the value assigned to the interior lots 1-5.
Cope, however, was of the opinion that lots 6 and 9 were less valuable than lots 1-5 and placed a value of $1.50 per square foot on these lots. Cope testified that he found these lots were oriented to Titleist Drive rather than to Highway 71 and were thus less valuable than lots 1-5. Gehr's value for lot 6 was $1.15 per square foot (the discounted figure) and for lot 9 was $1.25 per square foot (also a discounted figure).
The trial judge again evaluated the testimony of the various experts and reached a conclusion not precisely that of any of the experts, but within the range of values assigned by them. We find no manifest error in the trial court's square footage value.
In determining his award, however, the trial judge used an erroneous figure for the number of square feet in lot 6 (8,440 square feet). Both plaintiff and defendants agree that the proper figure is 9,494.2 square feet. Thus, the judgment will be amended to reflect an increase from $14,179.20 to $15,950.26 for lot 6. The award of $13,040.60 for the partial taking of lot 9 will be affirmed.

VALUE OF THE TAKING OF LOTS 79-83 (8-1-1) AND LOT 7 (COMPRISED OF 8-1-2 AND PART OF 8-1-1)
Lots 79-83 comprised part of parcel 8-1-1. Lot 7 comprised all of parcel 8-1-2 and part of 8-1-1. These interior lots are all located on Titleist Drive and have their highest and best use as commercial. The trial judge concluded that these lots have a value of $1.30 per square foot, accepting the value of Cope.
The defendants' experts both placed a value of $1.45 per square foot on these lots. Defendants contend the trial court erred in accepting the value assigned by Cope. They point out that Cope made an error in calculation because he used incorrect numbers for the square feet contained in three of the comparables he used. Defendants argue that he miscalculated his value for the lots in question. Additionally, defendants contend Cope is in error because in one other comparable he made a 4% error by subcontracting 20% instead of dividing by 120% to adjust the comparable which was a corner lot.
Cope testified at trial that he would have reached a higher figure using the correct square foot measure of the three comparables complained of, if these had been the only comparables used. The "4%" error complained of only pertains to Cope's calculation in the adjustment of only one comparable. The errors complained of do not materially affect the ultimate valuation realized by Cope.
Furthermore, we note that Gehr, according to his testimony, placed a value of $.70 or $.80 per square foot on these lots before discounting.
*1031 The trial court's conclusion of $1.30 per square foot for these lots is not clearly erroneous. It is within the range of the expert testimony, and we find no manifest error in the trial court's valuation for lots 7 and 79-83 for a total of $72,810.14.

SEVERANCE DAMAGES (GENERAL RULES)
In the recent case of State, Department of Transportation & Development v. Willett, 383 So.2d 1344 (La.App. 3rd Cir. 1980), this court set forth the following language regarding damages resulting from expropriation:
"In any discussion of the issue of damages arising from an expropriation, it is vital to a proper understanding of the outcome that the terms employed be defined. In offering these definitions we note that legal concepts seldom fit precisely into sharply defined terms. Our intention is solely to add clarity to this opinion, and hopefully reflect what is the general correct understanding of the terms in light of the principles established in our jurisprudence. The term `severance damage' describes those compensable injuries which flow from the partial expropriation of a parcel, specifically, the diminution in value of the land remaining to the condemnee. The term `consequential damages' has been used broadly to describe any damages resulting in a non-taking situation whether compensable or not. The term `consequential damage', for our purpose, refers to compensable special injuries to a parcel from which there was no taking, which flow from the effects of the public work or project, which injuries particularly affect his property only and which are not sustained by the neighborhood generally. And finally, the term `incidental damages' refers to the general loss or inconvenience experienced by the property owner and the public generally which is a cost that every citizen in organized society must pay to maintain and improve that society; in other words, `damna absque injuria.'
"The measure of severance damage is the subject of LSA-R.S. 48:453(B), supra, which clearly sets forth that where there is a partial taking, the measure of damages to the remaining parcel is the difference between the value of the parcel immediately before the taking, without taking into effect the public works or project; and, the value of the parcel immediately after the taking, taking into consideration the effects of the completion of the project in the manner proposed or planned."

LOTS 10-14 (SEVERANCE DAMAGES)
Lots 10-14 are located on the north and east side of Titleist Drive. These lots were not taken in the expropriation. They did, however, sustain consequential damages. Prior to the expropriation, the highest and best use of these lots was commercial. They were accessible to traffic entering and leaving the subdivision. The taking had the effect of severing the lots from the subdivision resulting in a change in the highest and best use from commercial to multi-family residential.
The defendants dispute the amount awarded by the trial court for the consequential damages to these lots. Willett found severance damages to be $.95 per square foot; Futrell found the damages to be $.94 per square foot.
The Department's expert, Cope, found damages of $.30 per square foot for lots 10, 11 and 13. He found damages of $.25 per square foot for lots 12 and 14. Gehr did not testify regarding these lots.
The trial judge found that lots 10-14 suffered damages of $.25 per square foot for a total of $12,958.28. The trial judge did not assign a before and after value to these lots. The damages to lots 10, 11 and 13 awarded by the trial judge were less than any of the estimated damages of any of the experts who testified.
Under these circumstances, we conclude that the trial court erroneously substituted his own opinion for that of the experts in the assessment of consequential damages for lots 10, 11 and 13. Therefore, the *1032 award for these lots must be amended. State, Dept. of Highways v. Eubanks, supra; State, Department of Highways v. Thurman, supra.
Since Cope's figure is the lowest expert estimate of damages, the trial court's award must be increased by the extent of the difference. State, through the Dept. of Highways v. Tate, 355 So.2d 1087 (La.App. 3rd Cir. 1978).[1]
The damages are computed as follows:

 Damages Per
 Square Feet Sq. Ft.
 ----------- -----------
Lot 10 9,401.5 × $.30 $ 2,820.45
Lot 11 9,229.1 × .30 2,768.73
Lot 13 9,123.8 × .30 2,737.14
 __________
 $ 8,326.32

This sum ($8,326.32), together with the undisturbed award for lots 12 and 14 ($6,019.68), is $14,346.00. We will award an increase of $1,387.72 which is the difference between the trial court's figure of $12,958.28 and $14,346.00.

LOT 9 (SEVERANCE DAMAGES)
Lot 9 was the subject of a partial taking. We have already discussed the location and value of the lot and here deal only with severance damages. The remainder of lot 9 is a small, nearly triangular parcel with an area of only 1,549.8 square feet out of a total before the taking of 9,312.1 square feet. The trial court awarded damages of $.25 per square foot for a total of $387.45. The damages per square foot are based on the trial court's reasoning that the remainder of lot 9 should be joined to lot 10 as one lot. Thus, the lot 9 remainder was damaged by the same amount as lot 10.
We have previously determined that the trial court erred in its assessment damages for lot 10, 11 and 13 since it was below the estimate of any expert. We, likewise, find that the trial court erred in severance damages award for the remainder of lot 9 since it was below the estimate of any expert. Cope estimated that the remainder of lot 9 was damaged by $1.10 per square foot (a total of $1,704.78). This was the lowest estimate of any expert. The award will be increased by the difference between the trial judge's award of $387.45 and $1,704.78 which is $1,317.33. State, through the Dept. of Highways v. Tate, supra.

LOT 15 (SEVERANCE DAMAGES)
Lot 15 is a commercial lot on the north and east side of Titleist Drive. A small portion of Lot 15 was taken as part of parcel 8-2. The trial judge valued the lot before taking at $1.20 per square foot. The area taken was valued then at $803.52. This amount is not disputed.
The trial judge determined that the remainder was damaged for the same reasons that he gave for his assessment of damages to lots 10-14. The trial court awarded $.25 per square foot for a total of $3,221.00. Thus, the trial judge's after value was $.95 per square foot.
Defendants contend that this award was erroneous as it was lower than any of the expert's estimates. The after value assigned by the trial judge is higher than any of the estimates given by the experts. Willett estimated an after value of $.48 per square foot; Futrell estimated $.54 per square foot; Cope assigned $.80 per square foot and Gehr estimated $.25 per square foot. We conclude that we must reduce the after value assigned by the trial court to the highest after value assigned by any of the experts which was $.80 per square foot assigned by Cope. The after value then is $10,310.48. Using this figure as the after value and the trial court's before figure (which is not disputed and is clearly within the range of the expert estimates of before value), the severance damages to lot 15 is $5,155.24. Since this exceeds the trial court award by $1,933.22, the judgment must be increased by that amount. State, through the Dept. of Highways v. Tate, supra.

*1033 LOT 19
Lot 19, a commercial lot comprising part of parcel 8-2, was the subject of a partial taking. Lot 19 was a rounded corner on Titleist Drive. A little less than 50% of the lot was taken, leaving a remainder of 11,169.9 square feet. The trial judge awarded $1.55 per square foot for the property taken for a total of $16,252.22. This amount is not in dispute.
The trial judge found that the lot remainder was of such size that it suffered no severance damages.
The defendants claim this was error since all experts who testified found severance damages. We agree. As stated above, the trial judge may not substitute his own opinion for that of the expert witnesses. State, Dept. of Highways v. Eubanks, supra.
Cope gave the highest estimate of value for the remainder after taking of $.50 per square foot or a total of $5,584.95. Using this figure as the after value and the trial court's before taking figure of $17,313.34, the severance damage is $11,728.39. The judgment of the trial court will be increased by this amount.

LOTS 20-22
Lots 20-22, which were commercial, were the subject of a partial taking (27,786.6 square feet) as parts of parcel 8-2. The trial judge concluded that these lots had a value before taking of $1.20 per square foot. Thus he awarded a total of $33,343.92 for these takings. This amount is not disputed. The remainder total area was 17,669.70 square feet. The trial judge concluded that the severance damages suffered was equivalent to $.20 per square foot (a total of $3,533.94). The after value was thus $1.00 per square foot, or a total after value of $17,669.70.
The defendants contend this award for severance damages is in error as it is below the estimates of any expert. We agree.
The highest after value assigned by any expert to lot 20 was $.38 per square foot (Futrell); the highest to lots 21 and 22 was $.41 per square foot (Willett), giving a total for all three lots of $7,085.53. Using this as the after value figure and the court's before taking value of $21,203.64, the severance damage to lots 20-22 is $14,118.11. The judgment will then be increased by $10,584.16.

LOT 23
Lot 23 is a residential lot located on the north side of Titleist Drive. A small portion of this lot was expropriated for which the trial judge awarded $.65 per square foot for a total of $537.16. This award is not contested. The trial judge found that this lot had incurred no severance damage because the taking was so small that it did not adversely affect the lot's value.
Defendants argue the trial court erred since all the experts testified that lot 23 suffered severance damage.
All of the experts indicated that lot 23 would suffer severance damage due to the proximity of the highway with the accompanying noise, fumes and vibration from the traffic.
We agree that the trial judge erred. If noise and vibration due to presence of a road cause diminution to the value of the remainder of property actually taken, severance damages are to be awarded even though such damages are not peculiar to the complaining owner, but rather are suffered by the neighborhood generally. State, Department of Highways v. Garrick, 256 So.2d 111 (La.1971); State, Department of Transportation & Development v. Willett, supra.
The value of the remainder before taking as found by the trial judge was $5,554.06. The highest value assigned by any expert after the taking was $4,875.00 (a unit value of $.65 per front foot). We will award the difference of $679.06 as damages to lot 23.[2]

LOTS 24-46
Lots 24-46 are residential lots along the north side of Titleist Drive. *1034 None of these lots were taken in whole or in part. The trial judge concluded that since these lots were not taken, under Reymond v. State, Department of Highways, 231 So.2d 375 (La.1970), the defendants are not entitled to damages resulting from the project absent a showing of special and peculiar damages.
The defendants argue that Reymond does not apply because lots are not separate properties, but part of a single property, even though they are to be sold as subdivision lots. They argue that the properties are wholly contiguous with a unity of use as well as ownership. Defendants contend that since all experts indicated that the project would damage the value of these properties and the properties are properly considered one remainder, they are entitled to severance damages.
This argument is without merit.
The basis of all the appraisals was that the property within the subdivision treated by the experts in their appraisal reports were considered as separate parcels in accordance with the subdivision plat and the manner in which the owners dealt with the property. The owners unquestionably intended the property to be a subdivision. For the owners to contend that these lots should be treated as a single, contiguous tract of land with the lots involved in the taking is inconsistent with the entire tenor of this expropriation proceeding. Under these circumstances, we will treat these lots in separate parcels. The case is controlled by the very recent case of State, Department of Transportation & Development v. Willett, supra, in which this court refused to award damages to the landowner for subdivision lots which were not taken or physically invaded, though damages were awarded for these lots which were subject to actual partial takings. The circumstances in that case were similar to the situation now before us.
The damages resulting from traffic noise, fumes and vibration are not peculiar to the property of defendants. The damages suffered by lots 24-46 are incidental since they were not taken and accordingly no damages are allowable. The trial judge was clearly correct in refusing to award damages on these lots.

PARCEL 8-3 (THE VALUE OF TAKING AND SEVERANCE DAMAGES)
The trial judge's reasons provide the following description of parcel 8-3:
"Parcel 8-3 involves a taking in full ownership of 0.094 acres from a parent tract of 29.3 acres. The parent tract lies on the west side of U. S. Hwy 71, and is undeveloped as of this date. The front portion of the tract has had some selective clearing of trees, but the main portion of the tract is heavily wooded, and lies away from the highway."
The trial judge found that the property taken had a value of $1.00 per square foot. Thus, he awarded $4,094.64 for parcel 8-3.
The defendants argue that such an award was erroneous because it was too low. They argue that the trial judge should ignore the appraisal made by the Department's experts, and consider only the expert appraisals of the defendants.
Our review of the record does not reveal that the trial court erred in its valuation of the property. Cope, after analyzing comparables valued the property at $.85 per square foot. Gehr valued the property at $.70 per square foot. Both Willett and Futrell valued the property at $1.50 per square foot. The trial judge was within the range of the expert estimates. The trial judge evaluated the weight to be given the experts and made a determination well within his discretion, not accepting or rejecting in toto the testimony of any of the experts. Greater Baton Rouge Airport District v. Carrick, supra; State, Dept. of Hys v. William T. Burton Indus., Inc., supra.
The trial judge awarded no severance damages for the remainder of the tract from which parcel 8-3 was taken. The defendants argue that this failure to award severance damages for the remainder was error.
The trial court made the following observations about the effect of the highway project on the tract:

*1035 "The tract in question has some frontage on U. S. 71 which is presently a main artery for the flow of traffic. After the new highway project is completed the section of Hwy. 71 fronting defendants' property will enjoy the status of a connector road between U. S. 167 and 71."

The essence of the trial court's finding, that there was no severance damages, is that mere diversions of traffic is non-compensable absent a showing that the value of the remaining property is reduced. Also, the trial court found that the defendant made no showing that access to his property had been restricted. These conclusions were supported by the testimony of the Department's experts.
Cope testified that because of the tract's prominence in the area and the position that it had with respect to the new intersection would cause the property to retain the highest and best use with the same level of value in the after status despite projected reduction on traffic on old Highway 71. Gehr testified that the property would retain visibility and would suffer no diminution in value.
Defendants argue that the property has sustained substantial severance damages because of:
"(a) limitation of access;
(b) imposition of median divider, resulting in the little frontage remaining, being accessible only in the outbound traffic lane;
(c) increased distance from relocated roadways;
"(d) loss of frontage and visibility;
(e) virtually total diversion of traffic because of the fact that old highway 71 will become merely a local connector road between the two main traffic arteries, as opposed to being the main traveled roadway."
Severance damages for impositions of medians, limitations of access, and diversions of traffic will not be awarded unless the defendants bear the burden of proof that the remainder has been reduced in value by the project. State Department of Highways v. Soileau, 315 So.2d 384 (La.App. 3rd Cir. 1975).
The trial court found that defendants did not prove that the property was diminished in value by the project, but rather that the property would continue to have access, visibility and that diversion of traffic would not be compensable.
The defendants argue that the trial judge improperly allowed general benefits to offset the damages to the property. We do not agree. Although the trial judge referred to possible benefits from the project, the basis of the trial court's decision is defendants' failure to prove that there was lack of visibility, a lack of access and that the diversion of traffic would reduce the tract's value. Expert testimony presented by the Department indicated that the project would not harm the value of the defendants' property.
We conclude that there was no manifest error in the refusal to award severance damages for the remainder of the tract from which parcel 8-3 was taken.

PARCEL 8-6 (VALUE OF TAKING AND SEVERANCE DAMAGES)
Parcel 8-6 is a taking of a very small triangle of 217.8 square feet from a parent tract of 1.631 acres. It is located on the southeast side of Highway 71 and is across the highway from the northern end of the tract from which parcel 8-3 was taken.
The trial judge found that the parent tract had commercial potential, but was less valuable than it otherwise might be because it was an odd shaped (triangular) tract. The trial judge awarded $1.00 per square foot for this taking for a rounded total of $220.00. The defendants argue that this award is erroneous as it is too low. Their experts testified that the tract had a value of $1.81 per square foot (Willett) and $1.82 per square foot (Futrell). The defendants owned a sewer servitude extending through adjoining property prior to the taking. No sewer had been installed, however. This sewer servitude from parcel 8-4 extended across the property of a John Girlinghouse *1036 to the tract in question (8-6). The Department took this servitude in connection with the project. The value of the servitude was stipulated to be $400.00.
Cope testified that the value of parcel 8-6 was $.75 per square foot. Neither expert took into account that there had existed a sewer servitude across the property previously belonging to Mr. Girlinghouse. Cope stated that had he been aware of such a servitude, his value would have been altered.
It is apparent that the trial court took into consideration the availability of sewerage since he valued the property at $1.00 per square foot. We find that the trial court did not err for he did not accept in toto the analysis of the Department's experts but did give some weight to that portion of their analysis consistent with the weight it deserved. Furthermore, the valuations of the defendants' experts are not binding on the court, but rather are advisory. State Department of Highways v. McPherson, supra.
We now turn to the question of severance damages to the remainder of parcel 8-6. The trial judge found that the remainder of the tract from which parcel 8-6 was taken was not damaged by the taking.
All of the experts who testified regarding the loss of the servitude for the sewer stated there would be some damage. Cope, who before trial was unaware of the servitude, did not place a dollar figure on this damage. He felt that the property was otherwise undamaged by the taking. Gehr stated that the property would be undamaged by the taking.
Willett and Futrell both testified that the value would be diminished by loss of the servitude. However, the extent of the loss due to loss of the servitude was not distinguished from the losses attributed to loss of traffic, reduction of highest and best use and temporary loss of commercially acceptable access during the period of construction. On oral argument counsel for defendants pointed out that defendants' experts added $.35 per square foot for lots which had sewers installed. For the 8-6 remainder, however, no sewer was installed. The reports of the defendants' experts do not reflect an estimate of the severance damages for loss of the sewer servitude.
As pointed out above, severance damages for diversion of traffic will not be awarded unless the defendants bear the burden of proof that the remainder has been reduced in value by the project. State Department of Highways v. Soileau, supra.
The trial judge found, and our review of the record confirms, there is no manifest error, that no damages resulted from the taking due to change in traffic patterns.
The defendants may have suffered some damage due to loss of the sewer servitude, but they failed to produce evidence showing the amount of such loss. Defendants have therefore not proved to a legal certainty the damages to the property. Therefore, no award can be made. State, through the Dept. of Highways v. Champagne, 371 So.2d 626 (La.App. 1st Cir. 1979).

TAKING OUT OF COMMERCE
Defendants contend that the trial court erred in failing to make an award for the removal of property from commerce from October 3, 1972 through the date of the taking.
In October of 1972, Darrell V. Willett, Sr., received a letter dated October 3, 1972 from Richard Currie, Right of Way Engineer for the Department of Highways (now Department of Transportation and Development). In this letter Currie requested "that no development be made on lots 1 through 7, 9, 16 through 18, 20 through 22 beyond a line 125 feet from the property line and lots 79 through 83." This request was made because the Department anticipated that these areas would be required for the proposed highway construction. A similar letter regarding nearby properties was received by Willett's son. In this letter, the son was informed that the Department would take the position that no compensation was due for improvements begun after the owner had knowledge of construction to be done with the area taken by the Department. Willett testified that as a result of *1037 this letter he did nothing with these lots and they lay dormant from the date of the letter until the taking.
The defendants seek to recover damages alleging that the Department's effectively prohibiting use of this property for nearly six years. They contend this prohibition resulted in a loss for which they should be compensated.
The trial judge rejected this claim because the award for the lots "taken out of commerce" were the market value on the date of the actual taking, not the date of the letter from the Department. The trial judge was of the opinion that to give damages for "taking out of commerce" would be to award defendants twice for the same item.
The defendants contend that there would be no double recovery because they may have been able to rent the property, thus receiving an annual return on their investment and a capital gain. We regard this as mere speculation. No evidence was offered that the property would, with legal certainty, provide a rental or other income. The estimate of defendants of a loss of income of 10% for two years and 12% for four years is speculative at best and does not establish a compensable loss.
The trial judge did not err in refusing to award damages on this claim. While it is true that the owner must be compensated to the full extent of his loss, La.Const.1974, Art. I, § 4, and that he must be put in as good a position pecuniarily as he would have been had his property not been taken, State, through Dept. of Highways v. Champagne, 371 So.2d 678 (La.App. 1st Cir. 1979), he will not be awarded compensation based on mere speculation. The defendants have not borne the burden of proof to show the extent of the alleged loss.

ALLEGED APPROPRIATION OF CERTAIN PROPERTY WITHIN 40 FEET OF OLD HIGHWAY 71
The Willetts owned property fronting on Highway 71. A portion of old Highway 71 will be used for the new highways. Maps indicate a right of way 80 feet for Highway 71 which is a two-lane paved highway. The Willetts contend that the Department did not have a recorded interest in the purported 80 foot right of way upon which the Willett properties fronted. The defendants concede that the Department has acquired a St. Julien servitude over the paved portion of the highway which has been used since about 1930. They, therefore, make no claim for compensation for the paved portion of the roadway, conceding that prescription would bar such a claim.
By reconventional demand, however, the Willetts contend the Department does not own any of the area outside the maintained portion of the roadway. They contend they should be compensated for the non-paved portion within the 80 foot right of way which will be used for the new highways. The Willetts seek to establish that the maintained portion is only the paved portion of the roadway. Alternatively, they seek to establish that the maintained portion includes only the shoulders and paved portion or the ditches on either side of the roadway, the shoulders and the paved surface.
In support of this claim, Willett testified that he had maintained the property within 40 feet of the highway centerline up to the shoulder of the road since 1970, the year he acquired the property.[3]
Willett and Futrell testified that by use of a tape measure they computed the area of land in dispute. Willett and Futrell measured from the alleged centerline at 100 foot intervals on both sides of the road along the Willetts' property expropriated by the Department and by this measure, computed the area of the land in dispute. The record does not reflect that either Willett or Futrell are experts in the field of surveying land.
*1038 The trial judge rejected the accuracy of these measurements and held that the Willetts failed to prove their case. We agree with the trial judge's conclusion.
During the trial, the trial judge informed counsel that a survey of this disputed area was needed. The trial judge stated that he would appoint a surveyor to make such a survey. Apparently no surveyor was appointed nor did defendants furnish such a survey, as none appears in the record. Even assuming that some of this area may be owned by the Willetts, we do not have the benefit of a survey from which to accurately compute any award that may be made. We note that maps filed in evidence show that the highway is curved at all points along the property of defendants fronting on Highway 71. The maps do not reflect the width of the shoulders or ditches that are present. We thus, assuming the Willetts proved ownership, cannot with any accuracy describe that property for which he would be entitled to compensation and we cannot accurately determine the area taken, if any, to fix any compensation that may be due.
The failure of the Willetts to bear the burden of proof justifies the trial judge's refusal to award compensation for this claim. We find no manifest error by the trial judge.

EXPERT WITNESS FEES FOR WILLETT
Defendants argue that the trial court erred in failing to award witness fees to Willett for his appraisal and testimony. Defendants argue that since Willett testified as an expert, he should be awarded fees for his work. Defendants contend that since the landowner must be compensated to the full extent of his loss, La.Const.1974 Art. I, § 4, he is entitled to a reasonable fee for work done in preparation of his own expert testimony.
This argument is without merit. This issue was previously presented in the case of State, Department of Highways v. Willett, 322 So.2d at 389, supra. In that case, this court stated:
"... Landowners, who incidentally are expert appraisers, are not entitled to fees for appraising and testifying in court proceedings involving their own properties...."
This has not been changed by the 1974 Constitution, nor has Willett otherwise proved that he suffered pecuniary losses by acting as his own expert.
The trial judge did not err in refusing to award expert fees to Willett for his own work.

COSTS FOR PHOTOGRAPHIC AND OTHER EXHIBITS
In making an award for exhibits prepared for defendants, the court made the following observation:
"Defendant seeks compensation for photographs and exhibits submitted to the court. The photographs and most exhibits were of little aid to the court, and the request for compensation for these items is denied.
"However, the large `Before' and `After' exhibits prepared by Mr. Loren Willett were of great aid to the Court in making its decision. I award $500.00 to defendant for expenses incurred in producing these exhibits."
Defendants seek an increase in this award.
When photographs are of assistance to the court, the landowner is entitled to have his photographer's expert fee taxed as costs. State, Dept. of Highways v. Mims, 336 So.2d 24 (La.App. 3rd Cir. 1976), writs den., 339 So.2d 16 (La.1976).
In this case, the trial judge was of the opinion that the photographs and most exhibits were of little value. We find no manifest error in such a determination.
The court did find two exhibits of great value in making his decision. The expert who prepared the exhibits charged the defendants $900.00. It is well settled that the setting of expert fees is a matter within the sound discretion of the trial judge. Wm. T. Burton Industries, Inc. v. Busby, 348 So.2d 1328 (La.App. 3rd Cir. *1039 1977), Borenstein v. Joseph Fein Caterers, Inc., 255 So.2d 800 (La.App. 4th Cir. 1971). The trial judge apparently felt that $900.00 was excessive and awarded $500.00 for these exhibits. We find the trial judge did not abuse his discretion.

EXPERT FEES FOR FUTRELL
The trial court awarded $2,250.00 as expert witness fees for Perry E. Futrell.
The defendants complain that this award is insufficient and should be increased given the size of the award, the number of hours spent in preparation and the amount of property involved.
It is well settled that the trial judge has much discretion in setting expert witness fees. Wm. T. Burton Industries, Inc. v. Busby, supra.
The trial judge was of the opinion that many items contained in Futrell's report were related to claims not compensable and that the report was not of great aid to the court. Our review of the record does not reveal manifest error in the award, therefore, we will affirm the award.

ATTORNEY'S FEES
The trial judge awarded defendants $10,000.00 for attorney's fees. On appeal, defendants argue that since this is less than the 25% of any excess award made, which was the amount agreed between defendants and their counsel, the trial judge erred in awarding only $10,000.00.
This argument is without merit.
LSA-R.S. 48:453(E) reads as follows:
"Reasonable attorney fees may be awarded by the court if the amount of the compensation deposited in the registry of the court is less than the amount of compensation awarded in the judgment. Such attorney fees in no event shall exceed 25% of the difference between the award and the amount deposited in the registry of the court."
This provision gives discretion to the trial court in making an award of attorney's fees. Such discretion cannot be limited by agreement between claimants and their attorneys. The fact that a 25% ceiling has been set by the legislature does not mandate that an award of 25% of the excess award must be awarded in attorney's fees. Such a ceiling means the trial judge may award reasonable fees which may not exceed 25% of the excess awarded.
Since we have awarded an increase of approximately $30,000.00, we will increase the award of attorney's fees by $2,100.00 to give a total award of $12,100.00.
For the reasons assigned, the judgment of the trial court is amended to increase the award to the sum of $332,674.34, subject to a credit for the amount deposited by the State of Louisiana, through the Department of Transportation & Development ($156,328.00), and to increase the award of attorney's fees to the sum of $12,100.00. The judgment of the trial court is further amended to fix all costs of the trial court against the State of Louisiana, through the Department of Transportation & Development, pursuant to LSA-R.S. 13:5112, in the sum of $539.57. In all other respects, the judgment of the trial court is affirmed.
Costs of this appeal are fixed in the amount of $577.50 and are taxed to the State of Louisiana through the Department of Transportation & Development.
AMENDED AND AFFIRMED.
NOTES
[1] In Tate, the trial court's award exceeded the highest expert estimate of damages. This court reduced the award to the highest expert estimate of damages. We hold that the converse is true. When the trial court award damages that are less than the estimate of any expert, the award will be reduced to the lowest reliable expert estimate.
[2] The remaining lots comprising parcel 8-2 were lots 16, 17 and 18. The trial court awarded $48,995.00 for the taking of these lots. This award is not contested on appeal.
[3] Prior to trial a correction deed was recorded in an attempt to indicate the Willetts' ownership of this property as it had been omitted in previous transfers to them, apparently since it had been assumed the Department owned an 80 foot right of way.