STOKER, Judge.
Plaintiff Louisiana Department of Highways appeals in this expropriation matter seeking a reduction of the trial court award to defendant-landowners[1] of the sum of $50,675.00. Plaintiff appellant also alleges that defendant-appellees are not entitled to the award of the $600.00 expert appraiser’s fee awarded to them by the trial court. This case involves the expropriation of 4.891 acres of land in Vernon Parish for highway improvement purposes under the “quick taking” statute, LSA-R.S. 48:441-460. The State deposited $22,657.00 in the registry of the court on the day of the taking, May 21, 1970, which was withdrawn by the landowner, James E. Brannon.
The landowner filed an answer to the expropriation suit and prayed for the fixing of an award of $66,600.00 with interest and costs.
The property taken was used for residential and commercial purposes. Severance damages are not involved.
The trial court gave written reasons for judgment on September 15, 1976. The value of the land taken at the time of the taking was fixed at $37,800.00. The value of the improvements was fixed at $12,-875.00. The total award was $50,675.00 and defendant-appellee’s expert appraiser’s fee was fixed at $600.00.
The appellees do not complain of the award. The appellant Department of Highways does not contest the award for *1303 improvements of $12,875.00. The only assignments of error are the value placed on the land taken and the award of the expert appraiser’s fee.
FACTS
The expropriated property is located on the west side of Highway 171 (the Shreveport-Lake Charles Highway) a little over five miles south of Leesville, Louisiana. It is located opposite the highway or road leading into Fort Polk. It has a frontage of 378 feet on the west side of the highway by an average depth of 450 feet but is quite irregular in shape. Of the 4.891 acres, a total of 4.714 acres (parcel 2-8) was taken in full ownership and 0.171 acres (Parcel 2-8-D-l) was taken as a permanent servitude of drainage. However, the appraisers and the trial court considered that the taking of the servitude amounted to a full taking for practical purposes and full value was assigned to it. A schematic drawing of the property is attached as Figure 1 to show the shape of the parcels and their relationship to the highway and entrance to Fort Polk. This sketch is based on plaintiff’s exhibit 3 introduced into evidence. As will be noted the highway leading into Fort Polk joins U.S. Highway 171 on the east forming a “Y” junction and runs in a southeasterly-northwesterly direction.
Until the taking the property had a combined use as residential and commercial. The commercial use consisted of an automobile repair shop, service station and used car lot. The highest and best use of the property is as rural residential and highway commercial.
VALUE OF THE LAND TAKEN
At the trial of the case one appraiser testified for each side. Mr. Normand Terry testified as an expert for the State and Mr. Leonard H. Thomas testified for the landowners. The appraisals perts were as follows: of these two ex-
Normand Terry (State):
Value of improvements $12,875.00
9.782.00 Value of land
Total taking $22,657.00
Leonard H. Thomas (landowners):
Value of improvements $28,800.00
Value of land 37,800.00
Total taking $66,600.00
It will be noted that the trial court accepted the lower appraisal for the improvements and the higher appraisal for the land. The issue on this appeal is whether the value of the land should be fixed at $9,782.00 or at $37,800.00. We find that the record adequately supports the trial court’s fixing of the value of $37,800.00 and affirm.
Plaintiff-appellant avers that the trial court erred in numerous respects in fixing the value of the land. One of the main contentions is that the landowner’s appraiser used only one comparable and relied on two sales made after the taking. Both appraisers considered sales made after the taking, but both testified that such sales were considered for comparative purposes only, that is, as a check on the before taking sales used as comparables. Mr. Terry considered four land sales he deemed as comparable which were made in 1964 and 1969. He adjusted the per acre sales prices upward. The testimony of the two appraisers is summarized as follows:
Normand Terry’s Comnarahles
Estimated value
No. A ores Sale date May 21.1970
2 1.653 1964 $2,700.00 per acre
3 3.857 1964 $3,250.00 per acre
11 2.75 1964 $2,650.00 per acre
28 [2] 8 (net) 1969 $ 562.00 per acre
Sales considered by Normand Terry after taking IMav 21.19701
A[3] 1.451 acres 1- 5-71 $3,583.74 per acre >
15.743 acres 11-16-70 $1,397.45 per acre Cd
.954 12- 7-70 $8,385.00 per acre O
1.449 8-18-70 $3,458.00 per acre O
*1304 T.ennard H. Thomas’ Comparable
No. Aerea Sale date Unit Price per aere
1 .85 8-21-69 $5,880.00
Salea considered by Leonard H. Thomas after taking ÍMav 21. 1970)
2 .958 acres 11-17-70 $8,350.00 per acre
3 .615 acres 6-18-70 $5,200.00 per acre
■ Sale C considered by Terry appears to be the same sale considered by Thomas as Number 2 which was from Esben F. Sheridan to Robert Kite. Terry computed this sale at $8,385.00 per acre and Thomas computed it at $8,350.00 per acre.
On the basis of his considerations Mr. Terry placed a value of $2,000.00 per acre on the land taken in the instant case. He valued the 4.891 acres at $9,782.00. The landowner’s appraiser valued the land at $37,800.00 based on a per acre value of $7,728.00. In its written reasons for judgment the trial court reviewed the compara-bles used by the appraisers and the post-taking sales referred to by them, together with other factors to be discussed below and summed up as follows:
The comparable used by the appraiser for the landowner together with the Rogers-to-Department of Highways sale appear to be more reasonably applicable to the present (time of taking) value than those comparables used by Mr. Terry.
After having reviewed the various com-parables used by both the Department’s appraiser and that of the landowners, this court is of the opinion that the landowners’ appraiser’s determination of value of the land is more reasonable and factually applicable to the assessment of land value than that of the Department’s.
On the other hand, it is the opinion of the court that the department’s appraiser’s evaluation of the improvements is more realistic and acceptable than that of the appraiser for the landowner.
From the foregoing comments we conclude that the trial court made a fair and independent evaluation of the testimony of the appraisers, and his conclusions are supported by the record. Both appraisers gave as their opinion testimony, what must be abundantly evident, that there is no such thing as an exact comparable. However, the gist or thrust of the Department’s argument in brief and oral argument is that appraisals, using comparables, are subject to some process of computerization resulting in exact calculations of value. To make the result in this case come out in the State’s favor, it would also be necessary as a predicate that the conclusions and opinion of the State’s appraiser be adopted. Despite the fact that the landowners’ appraiser used only one comparable, we do not regard that as necessarily invalidating his opinion. Moreover, Mr. Terry’s compara-bles, consisting of four sales, occurred several years prior to the taking, and it was necessary for him to adjust his figures considerably.
Courts are not bound by appraisals. Expert opinions are not ordinarily conclusive and are generally regarded as advisory in character. State, Department of Highways v. McPherson, 261 La. 116, 259 So.2d 33 (1972). The testimony of experts, based upon comparable sales (as the appraisers deem them comparable) are but aids to the court. The judge has the responsibility of fixing the proper compensation and the testimony of expert appraisers is for his assistance only. State, Department of Highways v. Anselmo, 301 So.2d 915 (La.App., 4th Cir., 1974), writ refused 304 So.2d 671 (La.1974).
THE COLLINS-TO-ROGERS-TO-DEPARTMENT SALE
The Department bitterly complains of the action of the trial court in considering what the trial court referred to as the Rogers-to-Department of Highways sale. The property referred to lies just south of the property of appellees and is shown in Figure 1 as Parcels 2-4 and 2-5. Parcel 2-5 is 141.97 *1305 feet south. This property formed a part of Mr. Terry’s comparable number 28 which he stated was eight acres net usable land. He fixed a value on this property of $562.00 per acre. Mr. Terry’s comparable 28, considered as eight usable acres, was based on a sale of 20 acres by Richard W. Collins to Henry Cain Rogers on October 30,1969. At the trial it was brought out that the heirs of Rogers had conveyed Parcels 2-4 and 2-5 to the Department on May 18, 1970, just three days before the date of taking, and that Mr. Terry had appraised the property for the Department in connection with the acquisition. Over objections, the trial court permitted the landowners to introduce in evidence a copy of the instrument of sale dated May 18, 1970, which conveyed the Rogers property to the Department. After the case was closed the trial court, on its own motion, ordered that Mr. Terry be required to give further testimony by deposition concerning this comparable 28 and details concerning his appraisal of the Rogers-to-Department sale of Parcel 2-5.
The two parcels in question were sold for $10,872.00. Mr. Terry testified in the course of the trial that he had made the appraisal but could not recall the figure at which he had appraised it. He stated that he understood that the State had paid approximately $10,000.00 for it. There were no improvements on the land but the Department objected to the introduction of the sale on the ground that the recited consideration was not only for the land, but was for any severance damages suffered as a result of the conveyance. It was urged that the bare sale could not disclose what was paid for the land itself.
Mr. Terry testified in his deposition that in the end he concluded he should disregard the sale of Collins to Rogers on the ground that the recited price was inexplicable. Nevertheless he included it in his appraisal report (P-8) as his Comparable 28.
We do not believe that either of the sales involving this property (Collins to Rogers or Rogers to Department) should be considered as indicators of the value of the property taken. On the other hand, certain facts concerning this land could properly be considered by the trial judge. Mr. Terry appraised Parcel 2-5 alone as having a value of $10,000.00. The trial court could properly have considered this appraisal in judging the credibility of Mr. Terry. In view of the fact that Mr. Terry appraised Parcel 2-5 at much higher figure than that at which he appraised the Brannon property, (Parcel 2-8) the trial court was justified in concluding that the opinion expressed by Mr. Terry should be rejected and that of Mr. Thomas should be accepted.
ADVERSE PRESUMPTIONS APPLIED AGAINST THE DEPARTMENT OF HIGHWAYS
The appellant urges that the trial court erred in applying certain adverse presumptions against it. Appellant charges that the trial court unwarrantedly assumed that the Department and its appraiser withheld information from the court. In the trial court’s written reasons for judgment the following appears:
Prior to the taking the Department had this property appraised by two appraisers, Mr. Normand Terry, who testified in court on its behalf, and by Mr. Darrel V. Willet. Mr. Willet was not called as a witness and no explanation was forthcoming from the Department as to why he did not appear as a witness.
* * * * * *
The court has been denied the benefit of the testimony of the other appraiser for the Department . . . There is an adverse inference to be drawn from the failure to produce the other Department appraiser. See State of Louisiana, Department of Highways v. Willet, 322 So.2d 383 [La.App.].
* $ * ‡ ‡ #
Furthermore, it appears there was a conscious effort on the part of the Department and the appraiser, Mr. Terry, to withhold from the Court the particularly pertinent testimony about a sale of certain property (Henry Cain Rogers sale) to the Department prior to the subject tak *1306 ing. The court had the benefit of this transaction only after ordering the testimony to be taken of Mr. Terry subsequent to the trial hereof.
After a careful reading of the testimony, we are unable to agree that the evidence convincingly discloses that Mr. Willet actually made an appraisal of the Brannon property for the Department. Beyond being present when Mr. Terry inspected the property, we do not know what role Mr. Willet played. Therefore, we do not feel that on this point there is any evidence in the record upon which an adverse presumption could be applied.
As to comments of the trial court regarding the failure of Mr. Terry to testify at the trial concerning his appraisal of Parcel 2-5 prior to the issue being raised by the landowner, we cannot say these comments were unwarranted. However, we consider them immaterial in view of our holding concerning the trial court’s justification in judging the credibility of Mr. Terry on the basis of his appraisal of Parcel 2-5 in relation to his evaluation of the Brannon property.
FAILURE OF THE TRIAL COURT TO RECOGNIZE THE PROBATIVE VALUE OF ONE OF ITS OWN JUDGMENTS
The appellant, Department of Highways, complains of the refusal of the trial court to recognize the probative value of one of its own judgments and the failure to admit the judgment and reasons for judgment supporting it into evidence. In this regard, the trial court erred. Prior judicial decisions of the value of expropriated property are good evidence of the value of similar property in subsequent expropriation proceedings. State, Department of Highways v. Romano, 316 So.2d 129 (La. App., 1st Cir., 1975); State, Department of Highways v. Alien, 243 So.2d 337 (La.App., 4th Cir., 1971) writ refused, 258 La. 245, 245 So.2d 716 (1971) and State, Department of Highways v. James, 226 So.2d 535 (La.App., 4th Cir., 1969). Such decisions are not controlling but may be considered along with other competent evidence adduced. Consequently, the prior judgment should have been admitted into evidence along with the reasons for judgment. However, we do not find that this error should change the result reached by the trial court under the circumstances of this case.
The judgment in question and the written reasons for judgment were permitted to become a part of the record by the trial court under an offer of proof. Although the trial court did not recognize the probative value of these items, we fail to find that they have any probative weight. In perusing the reasons for judgment, we are unable to relate the findings in the proffered reasons for judgment to the facts of this case. The record does not indicate that any testimony was offered for the purpose of relating the reasons given in the prior case to the property under consideration in this case. Therefore, the error of the trial court in refusing to admit the proffer judgment and reasons for judgment is immaterial inasmuch as we assume that the trial judge would not have been any more enlightened by them than we have been.
FAILURE OF APPELLEE’S APPRAISER TO APPRAISE SUBJECT PROPERTY AS OF THE DATE OF THE TAKING
Appellant has urged that the testimony of Leonard H. Thomas and his opinion is without validity because he valued the property as of October 14,1970, rather than the date of the taking which was May 21, 1970. This is certainly correct insofar as the record is concerned. Appellees readily concede that Mr. Thomas' appraisal report indicates the appraisal was made as of October 14,1970. Mr. Thomas admitted in his testimony that his report uses that date. Appellees urge however, that there should be no doubt that Mr. Thomas intended to declare that his appraisal applied to the date of taking rather than October 14,1970.
Appellee’s assertion is supported by the record. In the transmittal letter addressed to Mr. James E. Brannon, appearing at the beginning of Mr. Thomas’ ap *1307 praisal report, he opens by stating: “Pursuant to your request of October 14, 1970, I have thoroughly examined your property He concludes by stating: “It is my honest opinion that the market value of the subject property as of October 14, 1970 was: $66,000.00.” However, the appraisal report contains pictures of the subject property and its improvements taken in November of 1970, and on the page containing photograph number 1 a general explanation appears, which we quote as follows:
**Explanation: Pictures shown were taken in November of 1970. Property was expropriated in May of 1970. Had been vacated since that time with no care, upkeep or maintenance.
This cautionary statement referring to all the pictures clearly indicate that Mr. Thomas was familiar with the date of taking, May 21,1970, and that his appraisal applied to that date. We see no merit to appellants’ contention that Mr. Thomas’ appraisal did not reflect his opinion as of the date of taking despite the official statement at the beginning of his report. We regard the use of the date October 14, 1970, as an inadvertent error in which Mr. Thomas erred in referring to the date he was requested to make an appraisal rather than the date of taking.
Although appellant is technically correct in regard to this particular point, it is without substantial import. The error is not so grave as to affect the essential validity or worth of the appraiser’s opinion.
BURDEN OF PROOF
Appellant makes the general assertion that the trial court erred by misplacing the burden of proof in this case concerning the proving of the value of the expropriated property. We find the appellees have carried their burden of proving the value of the expropriated property. Under our findings in this case, the trial court’s acceptance of the appraisal of the land by Mr. Thomas rest upon his opinion based on one comparable sale which occurred prior to the taking. We find no error in this inasmuch as we have found that the trial court was warranted in rejecting the opinion of the Department’s appraiser.
EXPERT WITNESS FEE
In view of our affirmance of the trial court’s award of compensation for the land taken based on the appraisal and opinion of the landowners’ appraiser, the award of an expert witness fee was in order. Appellants do not complain of the amount which was $600.00. As we appreciate the error appellant alleges was committed, it was in awarding any expert witness fee. This is grounded on the position that Mr. Thomas found only one comparable and it should not have been considered as valid. Mr. Thomas testified that he had made an extensive search for comparables but rejected all but the one comparable he presented. In addition, he found the two post-taking sales which he used to confirm his impression. We regard the fee as having been earned and the amount is certainly reasonable.
For the above and foregoing reasons the judgment of the trial court is affirmed. All costs of this appeal which may be legally assessed against the State of Louisiana are to be paid by the State.
AFFIRMED.

*1308

. Defendant, James E. Brannon died during the pendency of this matter and was survived by a wife, Emily Sumler Brannon, and one son, Jerry Wayne Brannon, who are substituted as parties defendant and are the appellees in this appeal.

. This represented a sale from Richard W. Collins to Henry Cain Rogers, discussed later in this opinion. Mr. Terry gave later testimony in which he stated he disregarded this sale as a comparable.

. These sales were as follows:
A. Marie Pitre Quinn to Wiley C. Edleman
B. Fred Switzer to James H. Hollenbek
C. Esben F. Sheridan to Robert Kite
D. Sherman Enterprises, Inc. to Bonanza
Mobile Homes of Vernon Parish, Inc.