391 So.2d 1331 (1980)
CITY OF SHREVEPORT, Plaintiff-Appellant,
v.
Stanley J. BERNSTEIN, Defendant-Appellee.
No. 14345.
Court of Appeal of Louisiana, Second Circuit.
December 2, 1980.
Rehearing Denied January 13, 1981.
*1332 Francis M. Gowen, Jr., City Atty., Shreveport, for plaintiff-appellant.
Giddens, McKenzie & Garrett by J. David Garrett, Shreveport, for defendant-appellee.
Before MARVIN, JASPER E. JONES and FRED W. JONES, Jr., JJ.
En Banc. Rehearing Denied January 13, 1981.
FRED W. JONES, Jr., Judge.
The City of Shreveport filed suit to expropriate certain property belonging to the defendant for inclusion in a proposed recreational park. The defendant answered, contending in substance that the fair market value of the property was considerably higher than the sum tendered by the City, and reconvened for loss of rental income and attorney fees.
After trial judgment was rendered ordering the expropriation; fixing the fair market value of the involved property at $25,320; awarding defendant $5,088 for loss of rental income; awarding the defendant an attorney fee of $1,500; and fixing the expert witness fee of defendant's appraiser.
The City appealed this judgment, contending that the trial judge erred in (1) placing an excessive valuation upon the expropriated property; (2) allowing the defendant to recover for loss of rental income; and (3) awarding an expert witness fee for defendant's appraiser who had not been accepted by the trial court as an expert witness.
Defendant answered the appeal, asserting that (1) the value placed by the trial judge upon the expropriated property was inadequate; (2) the amount awarded for loss of rental income was insufficient; (3) legal interest on the value of the property expropriated should have been decreed due from the date that this value was placed at issue by the answer rather than the date of rendition of judgment; (4) the attorney fee for services rendered in the trial court should be increased; and (5) an attorney fee should be awarded to him for services connected with this appeal.
The real estate involved in this litigation consists of a lot in the Allendale area of Shreveport with a frontage on Milam Street of 80 feet and a depth of 125 feet. Four separate wood frame "shotgun" duplexes, occupied by tenants of defendant, were situated on the described lot. Each of the four units fronting on Milam Street rented for $48 per month and each of the four rear units rented for $45 per month. There was a minimal turnover of tenants and the units were normally fully occupied.
Defendant first learned of the City's plans relating to the proposed recreational park in March of 1976 when a city employee brought a letter advising him of the project. It was suggested that defendant inform his tenants of the proposal and advise them that the City would help them relocate. At that time defendant was under the impression *1333 that the acquisition of his property by the City would be consummated in about four months. In April, 1976 the defendant and a city employee spoke with the tenants about the planned park and their required relocation. In June, 1976 local newspapers published articles about the projected park. Appraisers representing the City inspected the property in August, 1976. By letter dated July 29, 1977 the City formally advised the defendant of its intent to acquire his property for the park. In September, 1977 the defendant received an offer from the City to purchase his property for $20,100, which he rejected.
Between April, 1976 and February, 1978 all of defendant's tenants vacated the rent premises because of the City's anticipated acquisition of the property. Defendant did not attempt to secure new renters for the units, but permitted them to remain vacant. According to defendant, vandals wrought their usual havoc upon his unoccupied property.
The City's expropriation suit was filed in April, 1978. Trial was had in June, 1979 and judgment was rendered on January 25, 1980.
Market Value of Expropriated Property
It is well recognized that the concept of "fair market value" has been used by our courts as a measurement of "just compensation." Market value is "that price most likely to be agreed upon after free and open negotiations between a willing seller and a willing buyer."[1] Market value may be calculated by the comparable sales method, the income capitalization method, or the replacement cost less depreciation method.[2]
The appraisers conceded that the best and highest use of the subject property was for income residential property. Further, they agreed that the most accurate method for establishing the fair market value was the capitalization of rental income approach, using a gross rental multiplier.
We recognized the validity of this approach in the case of State v. Gras, 131 So.2d 628 (La.App. 2d Cir. 1961) with this explanation:
"The process of gross income multiplication converts gross income into a value estimate by means of one operation by multiplying the gross income by a factor. For example, if in a specific district comparable unfurnished apartment houses, providing the same kind of service, were moving on the market at a certain multiple, such as 7 times the gross rental plus services, then the value of the subject property could be said to be 7 times its income schedule."
Thomas B. Dupree, Jr., one of the City's appraisers, testified that he examined nine comparable sales of properties in the process of establishing the appropriate gross rental multiplier for the subject property. In those sales, which took place between 1974 and 1977, the rental multipliers ranged from a low of 2.1 to a high of 4.6. Since the latter involved property which was only slightly more valuable than defendant's property, Dupree concluded that a gross rental multiplier of 4.5 would be appropriate in this case. Applying this to the annual rental of $4,064, he arrived at a rounded-off market value of $20,100. In October, 1979 Dupree revised this upward, based on increased rentals, to $21,400.
The City's other appraiser, John W. Landen, after examining what he considered to be comparable sales, calculated a gross rental multiplier of 4.17, and arrived at a market value of $20,000, which was revised upward to $21,160 in April, 1979.
Although not a professional real estate appraiser, Charles L. Thomas, Jr., who managed and owned extensive rental property, was tendered as an expert on behalf of defendant and was so accepted by the trial judge (appellant incorrectly asserts that Thomas was not accepted as an expert witness by the trial judge). This witness stated that the appropriate gross rental multiplier was 6.5 and bases his computation of market value on that figure.
*1334 After considering these appraisals, the trial judge decided to use a gross rental multiplier of 5.0 to calculate market value of the expropriated property. Further, since the appraisers for the City did not take into consideration the fact that the tenants paid their own water bills, he added an additional $600 to the annual rental income to which the gross rental multiplier was applied, arriving at a market value of $25,320 for the defendant's property which was taken by the City.
As we pointed out in City of Shreveport v. Pupillo, 390 So.2d 941 (La.App. 2d Cir. 1980):
"In expropriation cases the trier of fact's decision of the amount for which a landowner should be compensated is a factual decision and as such should not be disturbed by us on appeal in the absence of manifest error."
The following pertinent comment is found in State v. Van Willet, 386 So.2d 1023 (La.App. 3rd Cir. 1980):
"The trier of fact is not required to accept or reject the testimony of each witness in toto. The trial judge is not required to accept the precise amount of any expert. He may instead make an award in an amount to which no expert testifies since the trial court is empowered to evaluate the weight to be given to each witness' testimony, as well as to make factual determinations as to which of the facts relied upon by the witnesses relevantly influences market value..."
In the case at bar the trial judge made a fact-finding that the appropriate gross rental multiplier was 5.0 rather than the 4.5 suggested by the City's appraiser, Dupree. Since he was not clearly wrong in this finding it will not be disturbed on appeal.
Loss of Rental Income as Compensable Item
There is no question but that defendant's tenants began vacating their rented premises soon after learning of the City's plan to acquire that property for its proposed park. It is understandable that defendant did not attempt to secure new renters, not only because of the vandalism, but because he expected the City to proceed with its project in the immediate future. It was not his fault that the City delayed so long in completing the property acquisition. He did, in fact, suffer a loss because of the City's dilatoriness. Contrary to appellant's argument, defendant is not asking for damages because a third party (the City) induced his tenants to breach their rental agreements, but is simply seeking recovery of a loss occasioned by the contemplated expropriation proceeding.
It is now recognized that Article 1, Section 4 of the Louisiana Constitution of 1974
"... effected substantial changes in expropriation law, most of which are apparently aimed at protecting the interests of property owners. Potentially the most far reaching change was the inclusion of the phrase, `the owner shall be compensated to the full extent of his loss.' Although section 4 retains the phrase `just compensation,' the courts have looked to the new phraseology as the measure or standard for compensation."[3]
In State v. Constant, 369 So.2d 699 (La. 1979) the Louisiana Supreme Court construed this constitutional provision to require compensation for any economic loss sustained by the property owner, including the cost of replacing his business facilities. The court pointed out that the intent of the pertinent constitutional provision was to "broaden former constitutional concepts of the measures of damages" and "to permit the owner to remain in equivalent financial circumstances after the taking." It was not deemed constitutionally significant that the award to the landowner would exceed the market value of the property expropriated.
The record in the case under consideration establishes that the defendant lost rental income because of the City's action, or inaction, incidental to the expropriation proceeding. Denying recovery of that loss would violate the constitutional mandate *1335 that the owner "be compensated to the full extent of his loss." Further, contrary to the ruling in Constant, he would not "remain in equivalent financial circumstances after the taking."
For these reasons we conclude that the trial judge was correct in making this award of lost rentals to the defendant and properly acted within his discretion in computing the amount due, based on the period that elapsed between the visit of the City's appraisers to the property in August, 1976 and the filing of the expropriation suit in April, 1978.
Interest Computation
Appellee contends that legal interest should run from the date the value of the subject property was put at issue with the filing of his answer rather than from the date of the rendition of the judgment as decreed by the trial judge.
We recently held in Trunkline Gas Co. v. Rawls, No. 14,348, (La.App.2d Cir. 1980) that:
"In cases of expropriation by entities such as plaintiffs, the property is not taken until a judgment is signed and interest does not begin to run on the amount of the judgment from date of demand, but runs from date of judgment or from the date plaintiff appropriates the property to its use, whichever date is sooner."
Consistent with that reasoning, we agree with the trial judge that legal interest on the judgment for the value of the property taken should run from the date of rendition of the judgment, since the City had not appropriated the property to its use prior to that date.
Attorney Fees
La.R.S. 19:8 sanctions the award of attorney fees to the landowner if the highest amount offered by the expropriating authority is less than the actual compensation awarded.
In the case at bar the appellee asserts that the trial judge's attorney fee award of $1,500 was inadequate. The amount offered by the City to the defendant was $20,100. The total amount of the trial court's award was $30,408, including both the market value of the property taken and the amount of lost rentals. Therefore, the difference between the amount offered and the amount awarded is $10,308.
In City of Shreveport v. Pupillo, supra, we determined that an attorney fee based upon 25% of the difference between the amount offered to the landowner and the amount awarded by the court was a reasonable attorney fee. Consistent with that holding, we conclude in this case that the attorney fee, for services rendered in the trial court and on appeal, should be fixed at $2,500.
Conclusion
For the reasons set forth, we amend the judgment of the trial court to increase the attorney fee award to $2,500 and, as amended, affirm at appellant's cost.
NOTES
[1] M. Dakin & M. Klein, Eminent Domain in Louisiana 30-31 (1970).
[2] See NoteExpropriation: Compensating the Landowner to the Full Extent of His Loss, 40 L.Rev. 817 (1980).
[3] See Note, 40 La.L.Rev. 817, 821, supra.