398 So.2d 1159 (1981)
MONROE REDEVELOPMENT AGENCY, Plaintiff-Appellant,
v.
Succession of Joseph KUSIN, Louis Kusin and Rosalia Kusin Bloom, Defendants-Appellees.
No. 14518.
Court of Appeal of Louisiana, Second Circuit.
April 27, 1981.
Rehearing Denied June 4, 1981.
Farrar, Perry & Jefferson by Harvey P. Perry, Monroe, for plaintiff-appellant.
Bruscato & Loomis by Anthony J. Bruscato, Monroe, for defendants-appellees.
Before PRICE, MARVIN and JASPER E. JONES, JJ.
En Banc. Rehearing Denied June 4, 1981.
MARVIN, Judge.
In this expropriation under LRS 19:101 et seq., the plaintiff city agency appeals a judgment awarding the defendant landowners $183,000 in addition to the $187,000 deposited by the agency as just compensation for three parcels of property taken for the widening of Washington Street in Monroe.
*1160 The landowners answer, seeking to increase the award of attorney fees. We amend to allow attorney fees for services rendered by defendants' attorneys on appeal, and otherwise affirm, essentially for the excellent reasons stated by the trial court which are summarized here. Art. 1, § 4, La.Constn., City of Shreveport v. Bernstein, 391 So.2d 1331 (La.App. 2d Cir. 1980). See also State through Dept. of Highways v. Constant, 369 So.2d 699 (La.1979).
The agency expropriated three parcels (identified as Parcel 4-4, 5-2, and 5-3). Only the award for parcel 5-3 is questioned on appeal. The award for parcel 4-4 (39,000 square feet on which 12 dwellings were situated) was $73,000, $6,000 more than was deposited. The award for parcel 5-2 (50 square feet of parking area) was $100, the amount deposited.
The landowners own and operate Dixie Bedding & Furniture Store with facilities on either side of Washington Street. On parcel 5-3 located on the south side of Washington, defendants have a retail showroom occupying 9,261 sq. ft. and warehouse area occupying 10,935 sq. ft. of this parcel. Dixie Bedding is one of the largest retail furniture businesses in the mid-south with annual sales in excess of $2,000,000. The effect of the taking reduced the total retail showroom area by 17 percent (from 52,863 to 43,602 sq. ft.) and the total warehouse area by 32 percent (from 35,396 to 24,461 sq. ft.).
It was shown that if lost showroom and lost warehouse space were not replaced, the business would lose $100,000 to $150,000 in annual sales. The litigants stipulated that just compensation should not be determined by the capitalization of loss of income method because this method would greatly exceed the actual cost of replacing the lost showroom and warehouse space. The agency contends that the only method by which just compensation should or could be determined is market value based on comparable sales.
The trial court determined that replacement cost was the proper method to fully compensate defendants for their loss, relying on Constant, supra.
"In view of the constitutional requirement that they be compensated to the full extent of their loss, it is not constitutionally significant that the award to them will exceed the market value of the property used in their business operations. The very purpose of the constitutional language was to compensate an owner for any loss he sustained by reason of the taking, not restricted (as under the former constitution, see Dakin and Klein, Eminent Domain in Louisiana (1970) 70-72, 78-79, 95-96, 154-262), to the market value of the property taken and the loss of market value of the remainder, sometimes including the cost to cure such damagei. e., where (formerly) the award was based solely upon the physical value of the property and the economic injury to the property itself, but not including injuries to a business or the cost of moving it due to the taking." 369 So.2d at 702
The trial court concluded that the landowners should be awarded an amount which would pay for the purchase of four lots adjacent to the Northside business operations ($18,000), the cost of removing the improvements on those four lots ($3500), and the cost of constructing a building to replace the taken warehouse and display space ($275,722.40), a total of $297,222.40. Credit for the money deposited in the court's registry ($187,085.00) resulted in a judgment of $183,462.40. Attorney's fees of $5,000 were also awarded to defendants.
On appeal, the agency contends that the principle of Constant should not apply because that case involved a unique, special property, and that the instant case does not have such characteristics. We disagree. While Constant was unusual in that an entire marina was effectively destroyed by the taking of a part, the principle of Constant is interpretive of the constitutional directive of just compensation. In City of Shreveport v. Bernstein, 391 So.2d 1331, 1334 (La.App.2d Cir. 1980), we observed:
"In State v. Constant, 369 So.2d 699 (La.1979) the Louisiana Supreme Court *1161 construed this constitutional provision to require compensation for any economic loss sustained by the property owner, including the cost of replacing his business facilities. The court pointed out that the intent of the pertinent constitutional provision was to `broaden former constitutional concepts of the measures of damages' and `to permit the owner to remain in equivalent financial circumstances after the taking.' It was not deemed constitutionally significant that the award to the landowner would exceed the market value of the property expropriated." Emphasis supplied.
Here the landowners presented uncontradicted evidence that parcel 5-3 (two warehouses and a showroom) was an indispensable part of their furniture business. Under the Constant principle, the trial court was completely justified in awarding the cost of replacing the taken property. The trial court's award was for the full amount it would take to replace the warehouse and display area, without allowance for depreciation of the buildings, which admittedly were old. Although the usual method of calculating replacement cost includes a reduction for depreciation, this is not necessarily required in every case. Depreciation is designed to deduct for functional obsolescence, i.e., incurable depreciation. See Dakin and Klein, "Eminent Domain in Louisiana", Chapter IV, Section 7 at p. 256, et seq. Citing Bonbright's Treatise on Expropriation, Dakin and Klein indicate that a more accurate term than depreciation is "value inferiority". This term is certainly in accord with the expansive language of Art. I, Section 4 and Constant. We conclude from all of this that depreciation is only deductible in appropriate circumstances. See Dakin and Klein, supra.
The trial court was convinced by testimony that depreciation should not be deducted from replacement cost. It was shown that the use of the warehouses and the showroom did not require modern facilities and in fact, part of the business's image was one of low overhead by virtue of its antiquated facilities. In addition, both of agency's appraisers testified that the use lifetime of the old buildings was from 50-100 years. Such a period of time constitutes a "lifetime use" and no deduction should be made for depreciation. See Constant, Dakin and Klein, supra. We find no manifest error in the trial court's determination of the full replacement costs as just compensation under these circumstances.

ATTORNEY'S FEES
Defendants answer the appeal, seeking to increase the trial court award of $5,000 as attorney's fees. Defendants base this claim on the additional effort required in defending this appeal. First of all, we find no error in the trial court's award of $5,000 for attorney's fees at the trial level. This award was expressly based on the attorney's testimony of his time and his hourly rate. On appeal, appellee's attorney filed an answer, submitted a 17-page brief, and orally argued the case before this court. We deem an additional award of $1,500 would fairly compensate the landowners' attorney. Defendants' argument to increase the award to 25 percent of the difference between the amount tendered and the amount awarded, as in City of Shreveport v. Pupillo, 390 So.2d 941 (La.App. 2d Cir. 1980), is without merit. The landowners' attorney sought attorney fees in the trial court, testifying to his hourly rate and the time expended. Under these circumstances, we follow the trial court's method of calculating the increase of the award according to our estimation of the attorney's efforts on appeal.
The judgment is amended to increase the award of attorney fees from $5,000 to $6,500, and, as amended, and at appellant's cost, the judgment is AFFIRMED.