479 So.2d 985 (1985)
The REDEVELOPMENT AGENCY FOR the CITY OF ALEXANDRIA, Louisiana, Plaintiff-Appellant,
v.
Donald M. GARRETT, et ux., Defendants-Appellees.
No. 84-909.
Court of Appeal of Louisiana, Third Circuit.
December 11, 1985.
*986 Gist, Methvin, Hughes & Munsterman, John W. Munsterman, Alexandria, for plaintiff-appellant.
James C. Downs, Alexandria, for defendants-appellees.
Before FORET, YELVERTON and KING, JJ.
YELVERTON, Judge.
This appeal by the City of Alexandria is from an award in the expropriation of property belonging to Donald Garrett, located in downtown Alexandria, for the public use of construction of a hotel-civic center complex. The City deposited $109,800 as the amount due Garrett as just compensation. The trial judge determined the market value of the property to be $171,927.52, based on the data provided by the City appraisers, but using different inflation and depreciation percentages. The trial judge additionally awarded attorney's fees in the amount of $17,000, and damages for loss of rental income totalling $6,300. We find no error in the judgment of the trial court and hereby affirm.
In late 1982 the City of Alexandria, implementing plans for a civic center and hotel complex, expropriated certain property within a four block downtown area. The property with which this case is concerned was a part of that four block area and was owned by the defendant Donald Garrett and his wife. The trial judge provided extremely thorough and well written reasons for judgment stating the undisputed facts as follows:
"The property involved in this suit is located near the center of the four block area. It fronts 53 feet on Third Street, runs North 213.32 feet on Beauregard Street where it then fronts 106.66 feet on Main Street. The improvements consist of two buildings, one fronting 53 feet on Main Street by a depth along Beauregard Street of 106 feet and the second building, adjacent to and directly to the rear of the first, fronting 106.3 feet on Main Street by 108 feet on Beauregard Street.

*987 Although the building fronting Third Street is two stories, there is a continuous roof over both buildings and there is unimpeded ingress and egress between the buildings on the interior. The Third Street building was built around 1918. The exterior walls are solid brick and plate glass and the building contains approximately 5,618 square feet of floor space on each floor. The second floor is not finished. The evidence reflects that the roof was replaced on this building in about 1965. The Main Street building contains approximately 11,376 square feet of mostly open warehouse type space. The exterior walls are constructed of brick, 12 inches thick and 18 feet high. Steel trusts supporting the roof make the effective interior ceiling 14 feet high. The floor is concrete and the building contains approximately 11,376 square feet of space. The roof was replaced on this building in 1973 and an additional follow-up application of tar and gravel was added to the roof in 1977.
"The improvements cover the entire property. Total ground floor area is approximately 16,994 square feet. There is an additional 5,618 square feet on the second floor of the Third Street building. All experts agreed that the buildings were well constructed and structually sound. They also agreed that the buildings were not being utilized to their highest and best use which, according to a consensus, would be a conversion to offices or similar commercial use. Given as examples were insurance offices, or some type of office-warehouse combination such as a wholesale drug company or medical supply company, etc. The location of the property, in close proximity to the hospital and doctor's offices suggested these possibilities.
"The experts further agree that at the time of the expropriation the property was being put to its best interim use, that is, for a furniture warehouse. In the past, the property had been leased by its owners to a car dealership; a transmission business and for the last twelve years or so, for furniture storage to various furniture businesses."
At the trial, both parties presented expert testimony as to the value of the property. The City's experts utilized the Market Data method of appraisal while the owners' experts used a Cost Approach. The trial judge believed the Cost Approach to be too unreliable and therefore completely discounted the owners' appraisal. The City's appraisers, Mr. Noles and Mr. Mowad, estimated values of $100,000 and $113,000, respectively. The trial judge selected the three comparables considered by Mr. Mowad, two of which were also considered by Mr. Noles, which he found to be the most similar to the subject property. While Mr. Mowad and Mr. Noles had depreciated the subject property 50 percent from these comparables, the trial judge found that the only substantial depreciation factor was the location of the subject property which was in a slightly more depressed area. Finding no satisfactory justification for such a high adjustment percentage, the trial judge felt that "a 15% downward adjustment in value would more readily reflect the comparative market values of the subject property to the comparables." This adjustment resulted in the determined value of $171,927.52.
Damages were also awarded based on evidence of loss of rental income. Before the defendant was first notified of the threatened expropriation, the property was being rented for $550 per month. For the three years between the initial notification and the actual taking, Mr. Garrett received only $375 per month on a month-to-month rental basis. The trial court awarded damages of $6,300 reflecting the loss of $175 a month for 36 months.
Finally, attorney's fees for $17,000 were awarded.
The City contends that the trial court was clearly wrong in its determination of value, in awarding damages for loss of rental income, and in awarding excessive attorney's fees. As to the value of the property appellant claims that the trial court erred by substituting its own opinion *988 of value and thereby awarding an amount greater than that testified to by those appraisers who used the Market Data Approach approved by the court.
The applicable law on this issue was set forth in State, Through Department of Highways v. Brannon, 348 So.2d 1301 (La. App. 3rd Cir.1977) as follows:
"Courts are not bound by appraisals. Expert opinions are not ordinarily conclusive and are generally regarded as advisory in character. State, Department of Highways v. McPherson, 261 La. 116, 259 So.2d 33 (1972). The testimony of experts, based upon comparable sales (as the appraisers deem them comparable) are but aids to the court. The judge has the responsibility of fixing the proper compensation and the testimony of expert appraisers is for his assistance only. State, Department of Highways v. Anselmo, 301 So.2d 915 (La.App., 4th Cir., 1974), writ refused 304 So.2d 671 (La. 1974)."
In State, Department of Transp. v. Van Willet, 386 So.2d 1023 (La.App. 3rd Cir. 1980), writ denied 392 So.2d 692 (La.1980), we similarly stated:
"The trier of fact is not required to accept or reject the testimony of each witness in toto. The trial judge is not required to accept the precise amount of any expert. He may instead make an award in an amount to which no expert testifies since the trial court is empowered to evaluate the weight to be given to each witness' testimony, as well as to make factual determinations as to which of the facts relied upon by the witnesses relevantly influences market value and severance damages. Greater Baton Rouge Airport District v. Carrick, 258 So.2d 640 (La.App. 1st Cir.1972); State, Dept. of Hys. v. William T. Burton Indus., Inc., 219 So.2d 837 (La.App. 3rd Cir.1969), writs den., 222 So.2d 67 (La. 1969)."
In the present case, the determination of value reached by the trial judge falls within the bounds prescribed above. Using the testimony of the experts as an aid, he carefully selected three comparables, finding other comparables cited by the appraisers as "so different from the subject property as to make comparison so highly subjective and arbitrary as to be unreliable." He found only minimal differences in the conditions of the four buildings. The principal difference between the comparables and the subject property was found to be the location. After discussing the relative locations of the properties, the trial judge concluded that:
"In expropriation proceedings, the market value of the property is to be determined as of the date fo (sic) the taking. It is acknowledged that as of that date the subject property and surrounding neighborhood were inferior in location to the comparables referred to above and that some downward adjustment in value should be made because of this fact. However, the 50% adjustment used by Mr. Noles and Mr. Mowad appears, from all of the evidence and facts presented, to be excessive. Without calculating an increase in value due to inflation, as was done by Mr. Mowad on all his comparables, it is felt that a 15% downward adjustment in value would more readily reflect the comparative market values of the subject property to the comparables. The average price per square foot of building area on the three comparables was $11.96 per square foot. A reduction of 15% would make the subject property have a value, both land and building, of $10.16 per square foot. This certainly seems to be a minimal figure considering a base land value of $5.00 per square foot.2 Multiplying $10.16 by the area of 16,922 square feet, the Court finds the market value of the property to be $171,927.52."
The conclusion reached was not an independent opinion of the trial judge formed with total disregard of the expert testimony. It was a thorough and well reasoned factual determination as to which of the facts relied upon by the witnesses relevantly influenced the market value. Van Willett, supra. We find no error.
*989 We likewise affirm the damages for loss of rental income as we cannot find that the trial judge was clearly wrong in allowing this award. The case of City of Shreveport v. Bernstein, 391 So.2d 1331 (La.App. 2nd Cir.1980) recognized that loss of rental income is a compensable item of damages in an expropriation case.
The evidence in the present case establishes that from January of 1966 through September of 1979 Mr. Garrett was able to lease the property to various lessees for a minimum rental of $550 per month. In August or September of 1979 the tenant then leasing was forced to cancel the lease due to financial difficulties. On September 20, 1979, Mr. Garrett received a letter from the City of Alexandria informing him of the City's interest in acquiring his property as part of the Civic Center development project. The letter further stated that the property would be inspected for appraisal purposes in the near future. The inspection did occur in October of 1979. During this same time period Mr. Garrett obtained another lessee. This lease was on a month-to-month basis at $375 per month.
The trial judge found that this evidence established the defendants' entitlement to recover the difference of $175 per month for the 36 months the property was under threat of expropriation. After careful review, we cannot say that this determination was clearly wrong. Under La. Const. Art. I, § 4, the measure of the compensation which an owner is entitled to receive when his property is expropriated is "the full extent of the measure of the compensation which an owner is entitled to receive when his property is expropriated is "the full extent of his loss." It was proved in this case that reduced rent was part of the owner's loss.
The trial judge's award of attorney's fees is also affirmed. Although he realized he was not bound by the Quick Taking Statute, LSA-R.S. 48:441, et seq, the judge felt that an award of 25% of the difference between the initial deposit and the ultimate determination of value was justified in this case. City of Shreveport v. Bernstein, supra. Considering the necessary work involved and the difficulties of this case, we find no abuse of discretion in the award of attorney's fees.
For these reasons, the judgment of the trial court is affirmed, the City of Alexandria to pay the costs of this appeal, $1010.50.
AFFIRMED.
FORET, J., concurs with reasons.
FORET, Judge, concurring.
I agree with the majority review and file this concurring opinion only to note a caveat, if you will, regarding the award of loss of rent. While it is true that the Louisiana Constitution requires that a landowner whose property is expropriated is entitled to "the full extent of his loss," loss of rent is not usually an item of "loss" in the ordinary expropriation suit. In the ordinary case the lawsuit is filed, a simultaneous deposit is made by the expropriating agency for the loss as estimated by the agency, so that there is little or no compensable loss of rent. In this particular case, as pointed out in the majority review, the expropriating agency procrastinated for a period of three years between the time of the notice to the owner that his property would be the subject of expropriation, and the actual expropriation date. The plaintiff clearly showed a loss of rent during the three-year period ... a set of factual circumstances not usually found, as mentioned above, in the ordinary expropriation case.